PETER FARLEY, Respondent, v. HENRY PETTES ET AL., Appellants.

February 5, 1878.

1. The question as to whether a contract, alleged to have been made, was made, is a question for the jury, to be determined from the evidence of what the parties said and did, and not from the understanding of one of the parties of what he said or did.

2. Where a party to an oral contract has knowledge that the other party places a particular construction upon a doubtful term, and allows work to proceed on the basis of a perfected contract, without explanation, he will be estopped from denying the contract as understood by the other party.

3. Where the verdict is plain, and there can be no doubt as to its meaning, the fact that the jury failed to add interest to principal is immaterial. The clerk may make the addition, and enter judgment for one sum.

4. A judgment will not be reversed merely because evidence was introduced out of its proper order.

APPEAL from St. Louis Circuit Court.

*Reversed, and judgment.*

HITCHCOCK, LUBKE & PLAYER, for appellants, cited: 1 Ph. on Ev. 748; *Tennant v. Hamilton*, 7 Cl. & Fin. 122; *Carter v. Pryke*, Peake, 95; *Iron Mountain Bank v. Murdock*, 62 Mo. 74.

M. KINEALY, for respondent: The evidence complained of was part of the *res gestœ*, and competent. — *Sill v. Ruse*, 47 Cal. 341; *Morse v. Diebold*, 2 Mo. App. 163; *Owen v. Northup*, 30 Wis. 491. The order in which testimony is introduced is a matter within the discretion of the trial court. — *The State v. Porter*, 26 Mo. 209; *Dozier v. German*, 30 Mo. 216; *Rucker v. Eddings*, 7 Mo. 115. The form of this verdict is no ground for a new trial. — Hill. on New Tr. 133, sec. 13.

HAYDEN, J., delivered the opinion of the court.

This is an action to recover the sum of $2,100, which the plaintiff alleges the defendants agreed to pay him for building a sewer. The petition avers that the plaintiff built the

sewer at the request of the defendants, and that they agreed
to pay for it.   The defendants denied that the work was
done for them, and alleged that it was done by the plaintiff
for the St. Louis Tunnel Railroad Company, and with the
express understanding that the company would be liable for
the cost of building the same.   It appeared on the trial,
that the defendants were. owners of real estate on the street,
in St. Louis, under which the sewer was to be built; that
the Tunnel Company, being under obligations to build the
sewer, said to defendants that it would do so, but could not
then build it, as it was completely occupied in building its
tunnel; that it would give its note in payment for building
the sewer if the defendants, or others, would get the same
constructed.   There is some discrepancy here, as on some
other points, between the testimony of the president of the
company and that of the defendants, the former stating that
he left the defendant Leathe to make his arrangement
with the contractor, while the latter states that it was· his
part to make a contract between the plaintiff and the com-
pany.   Leathe was, however, authorized to give the com-
pany's note for the work; and the real dispute is, whether
the agreement between the plaintiff and the defendant
Leathe was that the plaintiff was to look to the defendants
for his money for building the sewer, or was to take the
company's note in payment.   The verdict of the jury in
favor of the plaintiff establishes that the former was the fact;
and the question here is, whether there was error in the
action of the court below in its rulings as to evidence or
instructions.

The instructions given by the court below, at the request
of the respondent and of the appellants respectively, pre-
sent simple and obvious ·propositions of law, representing
the two different theories.   The following was given at the
request of the appellants : —

"If the jury shall believe, on the whole evidence, that
Farley agreed with Leathe to build the sewer in question,

and to take the Tunnel Company's note for the amount of his bid for the work, then the jury must find a verdict for the defendants.''

This, in connection with the others which were given, sufficiently determined the law of the case, and presented the real issues which the jury were to pass upon. There was no need of the following, which the court gave, adding, however, of its own motion, the words in italics; and it would have been better and less confusing to the jury for the court to have refused the instruction as asked : —

'' That even though the jury should believe that Farley expected Pettes & Leathe to pay him for the sewer, and did not understand or agree that he would receive the Tunnel Company's note in payment for the work, yet if the jury shall also believe from the evidence that the defendant Leathe never did agree that he or his firm would pay for building the sewer, but understood, as a result of his conversations with Farley, that Farley was to take the Tunnel Company's note in payment for it, then the jury must find verdict for the defendants, *unless Leathe knew what Farley's understanding was.*''

On the evidence, it was plain that the agreement was either that the money should be paid or the note of the company taken for building the sewer, and this was the single alternative presented. There was no reasonable foundation, on the evidence, for the hypotheses of misunderstandings and results, and this instruction served only to obscure the plain ones given. But, apart from this, though the appellants complain, it is the respondent who has ground to complain of the giving of this instruction. The law does not make one man answerable for another man's logic,— certainly not one litigant for his opponent's logic,— but this instruction makes Farley responsible for the correctness of the conclusions that Leathe might have drawn; in other words, for Leathe's understanding of the results of his own conversation. Again, it is for the jury, not for parties, or even

disinterested witnesses, to draw inferences from what is said or done. From what Leathe said, the jury might have inferred that he agreed to pay Farley the money; yet, according to this instruction, whether the jury would have so inferred or not, if Leathe would have drawn a contrary conclusion, there would have been no meeting of the minds. Thus Leathe is made the judge of both facts and law. It is true, this instruction expressly says that the jury must believe that Leathe never did agree, etc. ; but these words are explained and qualified by those immediately following, in which lie the force and significance of the instruction ; and to a jury, the clauses, taken together, say that the question of contract or no contract (*i.e.*, as alleged by the petition) depends, not on what Leathe said or did, but upon his own understanding of what he said or did, which is a heresy in law.

It is equally apparent that the instruction was bettered, not worsened, by the addition. The appellants contend that the court below improperly added the words in italics, and that Leathe could not have understood, as a result of his conversations with Farley, that the latter was to take the note of the company, at the same time that he (Leathe) knew that Farley's understanding was the opposite of his (Leathe's) on this point; but if we are to deal with such far-fetched matters, it is evident that, from some expression dropped by Farley during the talk, Leathe might have gathered that Farley had drawn the conclusion that he (Farley) was to be paid the money by Leathe, while in fact Leathe, though talking ambiguously, had never agreed to pay the money, but only to give the company's note : this would have presented the case the court below intended to cover. The instruction, as asked, leaves out of view that Farley went on and did the work, and that Leathe allowed him to do it; but in the case put by the instruction, the law forbids a man to close a contract, to allow the other party to do work under it, and then to say *non hæc in fœdera veni*.

Thus, in the case supposed by the court, Leathe, seeing

how Farley understood this term of the proposal, should have said, " That is not my offer ;" and failing to say so, is bound by Farley's understanding, which Leathe knew, and to which, by his acts, he assented. Where there is doubt, one who has a perfect understanding of another's understanding of the doubtful term, and allows the other to act as on the basis of a perfected contract, is certainly estopped from denying there was a meeting of the minds. The law of the court below was, therefore, so far forth, correct, and if inapplicable by reason of the absence of ambiguity or possibility of doubt as to meaning, then the instruction as asked was inapplicable.

On the trial, witnesses were introduced, by the respondent, who made bids for the construction of this sewer, and asked on what terms they were requested by the defendants to make their bids. Against objection, they were allowed to answer, and, in answering, one witness stated that the bid he made was for cash. The answer is further objected to ; but if, as appears, the bid was received, the objection to the answer is substantially that to the question. As it does not follow that a person who makes or proposes to make a contract of one kind with one person is obliged to make a contract of the same kind with another person, this evidence should not have been admitted. On the same principle, evidence would be admissible to show that the defendants, in such cases, had a habit of making cash contracts. As the case stands, however, a result presented is this : that the evidence was admitted out of its proper order. Should we reverse for this error, the same evidence, substantially, would come in, only at another period of the trial. As against the testimony of the appellant Leathe, it could, in substance, be introduced to show how he was acting, to prove contrary statements, etc. Under the cases, we will not reverse for this error. *The State* v. *Porter*, 26 Mo. 209 ; *Dozier* v. *Jerman*, 30 Mo. 220 ; *O'Flaherty* v. *Kellogg*, 59 Mo. 490.

The verdict is intelligible, and there can be no doubt what

the jury meant. The fact that the jury did not add interest to principal, and make one sum, is nothing, and the clerk can always do this in making up the judgment. The jury, however, in fixing the principal sum at $2,100, gave more than, on any of the evidence, the respondent is entitled to. On his own theory, he has nothing to do with the note. His agreement was to construct the sewer for $2,000. Although it is shown that demand for payment was made, the date of such demand does not appear from this record.

The judgment of the court below will be reversed, and judgment will be entered here for respondent for a sum equal to $2,000 and interest from the date of bringing suit in the Circuit Court. All the judges concur.