Sutter v. Raeder.

SUTTER v. RAEDER, Appellant.

Division One, April 14, 1899.

1. **Legal Actions**: TRIED BY COURT: NO INSTRUCTIONS. If the action is one at law, and no instructions have been asked, refused or given, except a demurrer to the evidence, there is no question open on appeal for review except errors apparent on the face of the record proper, and the question whether or not under the issues plaintiff made out a *prima facie* case.

2. ———: ———: SPECIAL FINDING OF FACTS. A special finding of facts by the court sitting as a jury in an action at law does not dispense with the necessity of asking declarations of law and taking the ruling of the court on them.

3. ———: BREACH OF CONTRACT: PRIMA FACIE CASE. In a suit founded on a contract, where the answer admits the contract and pleads no affirmative defense, plaintiff is only required to prove the agreement as to an extension of time in which to perform the contract, compliance on his part, breach by defendant, and the amount of damages sustained.

4. ———: ———: MAKING DEFENSE FOR DEFENDANT. Where no modifi-
cation or rescission of a contract is pleaded by defendant, it is not
the court's duty to make the defense for him, but such defense will
be considered as having been waived.

5. **Contract:** MODIFICATIONS. Until the minds of the parties to a con-
tract meet at the same time upon the same terms of modification
thereof, there has been no modification.

*Appeal from St. Louis City Circuit Court.*—HON. LEROY B.
VALLIANT, Judge.

AFFIRMED.

J. D. JOHNSON and VIRGIL RULE for appellant.

(1)   The contract in suit was abandoned by mutual
consent of the parties, before appellant accepted the option
thereby given him, and a new agreement was consummated
by means of the telegrams and letters which passed between
the parties on March 18, 1893.    This is conclusively estab-
lished by the evidence, although there is some conflict in
the testimony as to what the exact terms of the new agree-
ment were on one particular point.    A contract can be re-
scinded, changed or modified by a new agreement supported
by a valuable consideration.    Henning v. Ins. Co., 47 Mo.
425; Day v. Ins. Co., 88 Mo. 331; Lanitz v. King, 93 Mo. 519;
Merrill v. Central Trust Co., 46 Mo. App. 236; Chouteau v.
Jupiter, 94 Mo. 388; s. c., 83 Mo. 73; Beach on Cont., sec.
6.   (2)   This second agreement was supported by a valuable
consideration, namely, the mutual promises and undertakings
of the parties thereto, and the cancellation or abandonment
of the old contract.    Moss v. Green, 41 Mo. 389; Bishop on
Cont., secs. 76, 68 and 768; Leonard v. Railroad, 54 Mo.
App. 293; Beach on Cont., sec. 5; 2 Parson on Cont., pp. 464
et seq.    (3)   This new agreement was not in accord and sat-
isfaction of the contract in suit as found by the trial court;
because:   (a)   There can be only an accord and satisfaction

of an existing debt, liability or right of action. 3 Bl. Com., 15, 16; Anderson's Law Dic., "Accord;" Dry Goods Co. v. Goss, 65 Mo. App. 55; Beach on Cont., secs. 422-454; 2 Parson on Cont. (8 Ed.), pp. 799-806. (b) To hold that the second was an accord without being a satisfaction of the first agreement would be, in effect, a holding that an executory agreement can not be canceled or modified by means of another executory agreement, even when supported by a valuable consideration. Such is not the law on the question. Beach on Cont., secs. 441-444; 2 Parsons on Cont. (8 Ed.), pp. 799 et seq.; Railroad v. Harrall, 80 Tex. 73; Babcock v. Hawkins, 23 Vt. 561. (4) As the petition counted on the third clause of the first contract, and the evidence conclusively showed that a new or modified agreement was entered into in place of the other, a fatal variance occurred between the allegations of the petition and the proofs. Parties may, for a valuable consideration, modify or change the terms of a contract; but when they do so, and a right of action arises thereon in favor of either, he must declare on the agreement as it stands modified, otherwise he can not recover. Lanitz v. King, 93 Mo. 513; Nicholas v. Larkin, 79 Mo. 264; Bank v. Hatch, 78 Mo. 24; Pier v. Heinrichoffen, 52 Mo. 333; Henning v. Ins. Co., 47 Mo. 425; Bunce v. Beck, 43 Mo. 266; Halpin Mfg. Co. v. School, etc., 54 Mo. App. 371. (5) The contract in suit was unilateral, and the time fixed for its performance was March 2, 1893. Appellant offered to extend the time to March 16; but the offer was not accepted or acted upon by respondent, and was without consideration. The time for its performance was of the essence of the agreement; hence respondent having let the time expire without performing his part of the agreement, his right to the stock thereunder was *ipso facto* lost. Hollmann v. Conlon, 143 Mo. 369.

J. M. HOLMES for respondent.

The change or modification in the contract, which defendant contends appears from the evidence, can have neither the effect claimed by defendant nor any other effect, for the following reasons: (a) It was not pleaded in any form or manner. The answer avers neither an abandonment of the contract sued upon, nor a modification of its terms, nor the substitution of a new contract. (b) The "substituted contract," to dignify it by such a term, as it can be gleaned from the statements of the parties and from the letters and telegrams read in evidence, is too vague and uncertain in its terms to constitute a cause of action if sued upon, and hence, to furnish a defense if pleaded as a defense. (c) The "substituted contract," even taking the view of it most favorable for defendant, is not in its terms, does not purport to be, and was not intended to be a complete and independent contract. It lacks almost every essential as to parties, terms, and subject-matter, required in a contract. It is absolutely unintelligible and meaningless in and of itself. It does not cancel or supersede the September contract in terms nor by implication. It covers only a portion of the ground covered by the September contract. Lawson on Contracts, sec. 397; Bishop on Contracts, secs. 1422, 1424 and 1431.

MARSHALL, J.—Action for damages for breach of contract.

In 1891, Sutter, Raeder and M. F. Taylor leased certain premises, on the corner of Ninth and Olive streets, in the city of St. Louis, from John W. Kaufman, for a term of ninety-nine years, with the purpose of erecting a new building thereon. The lease was not signed by Kaufman's wife, and contained a clause of forfeiture if any instalment of rent remained unpaid for ten days after it fell due. In consequence of these infirmities, it was found, after several efforts, to be impossible to secure the necessary capital, on the

security of the leasehold interest, to improve the premises, and likewise impossible to sell the lease. The improvements then on the premises were old and unattractive, and in consequence the rents derived from the premises were not sufficient to pay the rent, taxes and insurance or to make necessary repairs, much less improvements. The parties were therefore compelled to meet the excess out of their private resources. On the first of August, 1892, Sutter, the plaintiff, in common with the other parties, had met his responsibility in this respect, having advanced some four thousand dollars for this purpose, and was also liable on two notes—one for $2,500, which was held by defendant for negotiation, and one for $850, which had been negotiated but was not yet due. Under the arrangements among themselves defendant owned one-half interest in the lease, and plaintiff and Taylor owned one-quarter interest each. But before the 2d of September, 1892, plaintiff and Taylor had assigned a portion of their interest in the leasehold to H. J. Meyer, and Taylor had transferred his remaining interest to plaintiff, so that the interests of the parties at that time were: defendant five-tenths, plaintiff three-tenths and Meyer two-tenths. Defendant wanted to get rid of plaintiff as a part-owner of the leasehold and wanted to organize a corporation to be called the Central Realty and Improvement Company, with a capital stock of two hundred thousand dollars, to be fully paid up by transferring the leasehold to the corporation, for the purpose of erecting a new building on the premises. Accordingly it was agreed that in consideration of the transfer by plaintiff of his three-tenths interest to defendant, he, defendant, would release plaintiff from his liability on the $2,500 note held by him and would cancel the same, and would also pay the $850 note at maturity, and in addition thereto it was agreed as follows:

"In consideration of one dollar, to me in hand paid, and other valuable consideration, I agree,

"1. That, in case the building project now under consideration for the property bounded on the east by Ninth street, on the north by Locust street, on the south by Olive street and on the west by an alley, in the city of St. Louis, Mo., or a similar building enterprise on the same property costing not less that $750,000, of which Raeder, Coffin & Crocker are the architects, be an assured fact, within six months from this date I will give to E. A. Meysenburg a note for five thousand dollars, payable in ninety days from the date of issue; this note to be issued when the order has been received by said Raeder, Coffin & Crocker, to proceed with the plans of said building, but in no event later than six months from this date.

"2. In the event said building project, as described above, is an assured fact within the time above stated, the said E. A. Meysenburg shall have the option to choose as payment for the said consideration, in lieu of the said note for $5,000, a note conditioned the same as the note for $5,000, but for the amount of sixteen hundred and sixty-seven dollars and the issue to him of $20,000 of stock in a company to be organized for the purpose of acquiring the present interests in the said property, having total capital of $200,000.

"3. In the event that the building project above described is not an assured fact within six months from this date, I will issue to said E. A. Meysenburg $20,000 in stock of the company to be formed as above described, provided said E. A. Meysenburg calls for said amount of stock within six months from this date, and pay for the proper share falling to this amount of stock of the expenses incurred in carrying the above described property from August 1, 1892.

"Henry Raeder.

"St. Louis, September 2, 1892."

The agreement was made in the name of E. A. Meysenburg, at plaintiff's request, because he owed Meysenburg for

money loaned plaintiff to pay carrying charges, but Meysen-
burg at once assigned the contract to plaintiff. The plaintiff
conveyed his interest in the lease to defendant, who canceled
and surrendered the $2,500 note and paid the $850 note, and
immediately organized the Central Realty and Improvement
Company, transferred the lease to it, and received a certain
portion of the stock of the company as his share. The com-
pany afterwards secured a new lease from Kaufman which
was signed by his wife, and did not contain the objectionable
forfeiture clause. Before the 2d of March, 1893, Meysen-
burg, acting for plaintiff, made several ineffectual attempts
to secure from defendant a statement of the carrying charges
from August 1st, 1892. Before the expiration of the six
months specified in the contract it became apparent that the
"building project" would not be an "assured fact," and on
the 23d of February, 1893, Meysenburg wrote to defendant,
calling attention to the fact that the option embodied in the
third paragraph of the agreement would expire on the 2d day
of March, and asked an extension of the same until June 1st,
1893, and further asked for a statement of the carrying
charges. The defendant refused to extend the time until
June 1st, but proposed that if Meysenburg would pay a note
for $250 made by Taylor and held by defendant, and would
pay $1,200, approximated, on account of carrying charges
and $400 on account of repairs then being made on the build-
ing (said amounts being one-tenth of such costs) he, defend-
ant, would take fifty of the two hundred shares referred to
in the third paragraph of the agreement, at twenty dollars
a share, aggregating one thousand dollars, and apply that
sum on the $1,850 approximated as aforesaid, thereby leav-
ing Meysenburg to pay $850 and get one hundred and fifty
shares. On the 25th of February, 1893, Meysenburg replied
expressing regret that defendant had not granted the exten-
sion and asked an itemized statement of the carrying ex-
penses, so that he could make his plans accordingly, and

requested an extension of the option until March 18th, but did not accept defendant's proposition. On the 27th of February defendant answered extending the option until March 16th, and suggesting further personal negotiations respecting the option. On the 9th of March defendant again wrote Meysenburg to the same effect. On the 10th of March, Meysenburg replied, regretting his inability to go to Chicago, but telling defendant that Sutter was in Chicago and would call on him, and saying he, Meysenburg, would inform defendant what was to be done in the matter of the option by the 16th of March. Sutter had several interviews with defendant before the 16th, at which propositions along the lines of defendant's first proposition were discussed. On the 11th of March defendant wrote Meysenburg that he had no desire or intention "to avail himself of the situation to obtain the stock in question" to Meysenburg's disadvantage, and that Sutter had called the day before but that he did not think "the talk between him and my partners did any particular good," but he had requested Sutter "to call again on Monday." On Monday Sutter and defendant had a further interview at which defendant renewed his first proposition. There was no final conclusion reached however, and Sutter returned to St. Louis. On March 15th Sutter wrote defendant proposing that he should take one hundred shares, instead of fifty, at twenty dollars a share and that he, Sutter, would pay his proportion (one-tenth) of the carrying charges since August 1st, 1892, and a like amount of the cost of repairs, and would, in future, pay the carrying charges in proportion to his stock holding of one hundred shares, and again asking for a statement of those charges. On the 16th of March defendant replied by telegraph declining Sutter's proposition of the 15th and saying "our proposition of Monday is the best we can handle," etc. On the 16th of March Sutter telegraphed defendant asking him to take fifty shares at one thousand dollars and "our paper for balance of amount due."

To which defendant replied, by telegraph, on the same day, "We can not modify our verbal proposition of last Monday." Sutter, on March 16th replied, by wire, "Telegram received. Will comply with terms. Send stock and itemized statement to-night," and wrote, at the same time, to the same effect. On the 17th of March, Sutter received a letter from defendant, dated March 16th, saying his telegram was received, "accepting our proposition of last Monday," and informing him that he had sent the stock to his uncle, F. Wm. Raeder, who was the secretary of the company, to be turned over to him "conditioned upon your paying him to-morrow, Friday, $850, for which" (the stock) "Mr. Meysenburg must sign a receipt and also sign an agreement to stand his proper share of the charges for carrying the property. We have signed similar papers ourselves. Mr. Raeder will also hand you a receipt for $400." On March 17th Sutter wired defendant that his letter was received and adding "we must have statement," and wrote him to the same effect, saying the amounts previously mentioned had always been considered as only approximate. On the 17th of March F. Wm. Raeder called on Meysenburg, who being busy, Raeder agreed to return during the afternoon, but when he did so, Meysenburg had been called home by sickness in his family, and it was accordingly agreed between Raeder and Meysenburg's clerk, acting for him, to postpone the matter until the next day. On the 18th Sutter received a letter from defendant, dated the 17th, inclosing the itemized statement of carrying expenses, which he said had been unintentionally omitted from his previous letter, and which statement showed that those expenses amounted to $11,868.20. On the 18th of March, F. Wm. Raeder, acting as aforesaid for defendant, met plaintiff and Meysenburg, and offered to turn over 149 shares of stock (one share having been previously issued to Mrs. Sutter) upon payment of $850, and upon Meysenburg signing an

agreement, as indicated, for the first time, in defendant's letter of the 16th, "to stand his proper share of the charges of carrying the property," which was the proportion that one hundred and fifty shares bore to the two thousand shares capital stock of the company. Raeder did not have the Taylor note for $250 and had not been instructed to deliver it to plaintiff, and he therefore declined to deliver the stock except upon the terms directed by defendant. Meysenburg refused to sign the agreement to pay future carrying charges and Sutter demanded the Taylor note. Thereupon Sutter and Meysenburg tendered F. Wm. Raeder, $1,186.82, being one-tenth of the $11,868.20, total cost of carrying the property, as shown by the itemized statement furnished by defendant, and demanded the two hundred shares of stock in accordance with the third paragraph of the agreement of September 2d, 1892. The $400 for repairs was not tendered as the repairs were not completed and the bill was not due, and like the $250 for the Taylor note was not included in the agreement of September 2d, 1892, and was not therefore tendered.

Plaintiff then instituted this action, counting upon the third paragraph of the agreement of September 2d, 1892, as extended in point of time by the defendant's letter of February 27th, 1893. Defendants answered, admitted the contract with Meysenburg, but denied plaintiff's assignment, and also denied the extension to March 18th, denied that the carrying charges were only $11,860, the tender of $1,186, and the demand for the two hundred shares of stock, and denied the alleged market value of the stock.

The evidence for plaintiff was substantially as here stated, with the addition of testimony as to the value of the stock. At the close of plaintiff's case, defendant demurred · to the evidence, the court overruled the demurrer and the defendant excepted. The facts shown by the defendant were not materially different from those here stated. The case

was tried by the court sitting as a jury.   No instructions were asked, except at the close of plaintiff's case.   The court, at defendant's request, made a separate finding of the facts, saying: "that the court was satisfied from the evidence that there had been no modification or change of the contract in the sense that a new contract was made to take the place of the original; that the original was an executory contract, and as the day for its maturity approached negotiations were entered upon looking to an accord and satisfaction of the contract otherwise than as specified by its terms, that such new terms were proposed and accepted, but that it did not amount to a new executory contract, and was not so intended, but was designed to be executed at once, and when so executed to be taken in lieu and satisfaction of the original agreement; but that it was not so executed, and the original contract was left unimpaired," and the court thereupon entered judgment for the plaintiff for $4,746.73, which was arrived at by taking the price at which defendant sold the stock to other parties, less the amount of carrying charges, plus interest from the date of demand.

   After proper steps defendant appealed the case to this court.

## I.

   This being an action at law and no instructions having been asked, refused or given, except the demurrer to the evidence, there is no question open here for review except errors apparent upon the face of the record proper, and the question whether under the issues the plaintiff made out a *prima facie* case.   [Sieferer v. St. Louis, 141 Mo. l. c. 592, and cases cited.]   The fact that, pursuant to section 2135, R. S. 1889, the court made a special finding of fact, does not change the long established rule in this State that this court will not review the finding of the lower court on questions of fact, in actions at law.   The special finding of fact, under our practice, serves only to accentuate the ruling of the court

below on questions of law, pointing out more clearly the theory of law applied by that court to a given state of facts, but it does not dispense with the necessity for asking declarations of law and taking the ruling of the court on them, nor does it open up a question of fact in this court. Our jurisdiction in such cases is appellate, and not original, under the Constitution, and it was not the purpose nor within the power of the legislature to require this court to review questions of fact, in law cases, even where there was a special finding below.

## II.

The petition was founded on the contract of September 2d, 1892. The answer is specific but not as broad as a general denial would have been, for it expressly admits the contract of September 2, 1892. There is no affirmative defense of any kind pleaded. The contract sued on being admitted, the only thing left by the pleadings for plaintiff to prove, was the extension of time, compliance with it on his part, breach by defendant, and the amount of damage sustained. In the course of establishing these necessary facts, it developed that, during the life of the contract, Meysenburg, acting for plaintiff, asked that the time for performance, on his part, be extended from March 2d, to June 1st, 1893, and that instead of so doing, the defendant by his letter of February 27th, 1893, extended the time to March 16th, 1893, and at the same time invited negotiations looking to a modification or change of the contract, but did not in any way make the extension of time dependent upon such negotiations. The plaintiff and Meysenburg lived in St. Louis and the defendant in Chicago, so almost all of their dealings, negotiations and propositions were conducted by correspondence. Extended reference has been made to all these negotiations in the statement of this case. The letters commingle the negotiations had between the parties respecting the extension of time,

with those respecting propositions of modification or change in the contract, so that they were properly admitted in evidence to establish the allegations of the petition as to the extension of the time, but the fact that they also unavoidably disclosed the propositions of modification did not bar plaintiff's right to recover, for such matters in such letters did not tend to establish or disprove any issue joined in the case, and were not admitted by the court for any such purpose. The testimony of the plaintiff clearly made out a *prima facie* case under the pleadings, and the demurrer to the evidence was therefore properly overruled.

## III.

Defendant contends that there was a fatal variance between plaintiff's allegations and his proofs, and that the proofs show that the original contract was superseded by a new one entered into on the 16th of March, 1893, and that plaintiff can not therefore recover on the contract pleaded.

There is no doubt that parties may modify contracts, and if they do so no action can be maintained on the original contract [Lanitz v. King, 93 Mo. 513], but their rights are as expressed in the new contract. The principle thus contended for is so ancient as to be a truism in the law. Its application to any given case, however, is always the crucial question. Here the contract is admitted by both parties. There is no plea of rescission or modification thereof except as to the extension of time. In proving the extension, these matters, now claimed to be a variance and a modification or substitution of a new contract, being inextricably mixed with the agreement as to the extension of time, cropped out. There was no objection to this evidence on the ground of variance with the allegations. But it may be said that defendant was simply standing by and allowing the plaintiff to prove himself out of court in this way. The answer is that as the defendant had not chosen to set up a plea of modifi-

cation or substitution, it was not the duty of the court to make a defense for him or to cut off the plaintiff's recovery for this reason, when so far as the pleadings showed, the defendant had waived that defense, as he had a right to do, and had elected to try the case on the original contract.

## IV.

But the question presents itself, what was the substituted contract? There is a most vital difference between the parties as to what the proposition to modify the original contract really was. Plaintiff says it was that the defendant was to take fifty shares of the two hundred shares, at twenty dollars a share, and to credit the one thousand dollars on his liability for carrying charges, estimated at twelve hundred dollars, on the four hundred dollars he was to pay as his share of the cost of repairs and on the two hundred and fifty dollarTaylor note which he was to pay, thereby leaving him, plaintiff, to pay, approximately, eight hundred and fifty dollars and to get one hundred and fifty shares. The defendant adds to this however the further important stipulation that Meysenburg was to become personally responsible for the proportionate part of the carrying charges, which their one hundred and fifty shares bore to the two thousand shares. This idea was first expressed in defendant's letter to Sutter, dated March 16th, 1893, and was insisted upon by F. Wm. Raeder on the 18th of March as an essential prerequisite to his delivery of the stock, and defendant insists it was in the proposition he made on Monday, March 13th. It was because of this feature that the proposed modification was not accepted by plaintiff and Meysenburg on the 18th. That there had been no modification prior to that is shown by all of the letters and correspondence and even by defendant's telegram of the 16th, in which he speaks of his "proposition." Manifestly, therefore, the minds of the parties never met at the

same time, upon the same terms, and without this there could be no contract. When it is remembered that the stock was full paid and was non-assessable, the objection of a minority stockholder to agree to pay whatever assessments the majority might, at any time in the future, impose for carrying charges, repairs, improvements and perhaps reconstruction, becomes obvious and easily appreciated. Which then was the contract of substitution the evidence shows cuts off his right of recovery? Upon either plaintiff's showing or upon the whole case it is therefore plain, that the court was right in holding that there had been no effective contract of modification or substitution entered into and that plaintiff's rights under the original contract remained unimpaired.

Finding no error in the judgment of the circuit court, it is affirmed. All concur, except VALLIANT, J., not sitting.