B. T. MORAN, INC., APPELLANT, v. JOPLIN STATE BANK, RESPONDENT.[*]

Springfield Court of Appeals. Opinion filed May 23, 1929.

---

[*]Corpus Juris-Cyc References: Contract, 13CJ, section 48, p. 264, n. 81; Sales, 35Cyc, p. 52, n. 40; p. 83, n. 7.

*Clarence T. Craig* and *Owen & Davis* for appellant.

*George V. Farris* for respondent.

SMITH, J.—This is a suit where plaintiff attempts to recover of defendant the sum of six hundred ninety-five dollars for 500 ladies and gents wallets and dime banks, 2000 letters and 10,000 cards sold by plaintiff to defendant upon an order signed by the cashier of the defendant bank.

The contention of the defendant is that according to the contract the plaintiff was to take back at the cost price, at the end of six months, all unsold banks and wallets, and the contention of the plaintiff is that it was not to take back such banks and wallets unless the defendant had permitted the plaintiff to send a representative to conduct a campaign disposing of said banks and wallets at an additional cost to be paid by the defendant, and that the defendant refused to permit the plaintiff to send the representative, therefore the defendant forfeited its right to return the unsold goods, and was liable for the entire amount of the order.

It was admitted that the plaintiff shipped and the defendant received the entire amount of the order, and that at the end of the six months period the defendant shipped back to the plaintiff three hundred of the banks and wallets and tendered plaintiff $320 for the two hundred banks and wallets kept and sold, and for the letters and cards; that the plaintiff refused to accept the return of said banks and wallets, and refused to accept the $320 tendered. A trial was had before the court, a jury having been waived, and judgment rendered by the court for the plaintiff in the sum of $320 and the plaintiff has appealed.

Not a single objection to the introduction of testimony was made, so far as the record shows, and the plaintiff claims that the testimony introduced did not justify the court in refusing its declarations of law numbered A and B and in giving the four declarations of law given at the request of defendant.

The controversy in this case is over the terms of the contract as to furnishing a representative in the disposition of the goods, and the conditions under which the plaintiff would take back unused wallets and banks. Plaintiff offered as its Exhibit A the original order containing the items ordered (about which there is no controversy) and it also contained the following:

"The company will furnish an operator to manage campaign for which service the Bank will pay ten cents per wallet ordered up to time operator is withdrawn from the Bank.

"Remarks—Pending wire of O. K.

"Bank—Joplin State Bank.

"Officers—Jno. W. Jones, Cashier.

"City of Joplin, State Mo.

"R. L. Carlin, salesman.

"Accepted: B. T. Moran, Inc.

"By B. T. Moran.

"This order is not subject to cancellation."

The defendant offered as its Exhibit 1, a copy of the order left with it by the plaintiff's salesman which is like plaintiff's Exhibit A, except under "Remarks" it has the following:

"This is to notify that I agree to take back at the end of six months all wallets left of initial order at cost.

"R. J. Carlin."

We will now set out the correspondence between the parties, giving all the contents of the letters so far as they are material here, and leaving out the remainder.

### Exhibit B.

Joplin, Mo., January 12, 1927.

Mr. B. T. Moran,

Chicago, Ill.

Dear Sir:

We gave your salesman an order for five hundred wallets and banks subject to our approval.

Mr. Carlin stated in our order that he would take back any wallets we might have on hand at cost at the end of six months providing we could not put them out according to plan. He further stated that we had the exclusive right for this city on same. If you will mail your approval of the above, this letter will serve as a notice to you that we approve the order.

Yours truly,
JNO. W. JONES, Cashier.

### Exhibit C.

January 15, 1927.

Joplin State Bank,

Joplin, Mo.

Gentlemen:

Attention Mr. John W. Jones, cashier.

Your letter of January 12th regarding your order . . . has been received. It's a departure from our usual practice to agree to take back, under any condition, supplies made up for and furnished to our customers, but in your case, in so far as your initial order of 500 wallets and dime banks is concerned, we will do so under the following conditions:

We will take back six months after your campaign has been started any wallets and dime banks left over with the understanding that you are to continue an active campaign for six months if necessary; use our plan of distribution in connection therewith, distributing all the letters and cards necessary to cover all your depositors; and that the campaign be managed by one of our trained operators as provided for in your order. . . . So long as your campaign is in operation, we will not sell our plan to any other bank in your town.

On the presumption that this letter covers your requirements, we are proceeding with the preparation of the supplies you ordered, and they will be shipped as promptly as possible.

Yours very truly,<br>
B. T. MORAN, Inc.<br>
By B. T. MORAN.

Defendant's Exhibit 2.

January 19, 1927.

B. T. Moran, Inc.,<br>
Chicago, Ill.<br>
Gentlemen:

In reply to your letter of January 15th will say that we cannot consent to any change in the terms of the contract made by your salesman. At the time your salesman took this order he stated that it was optional with us as to whether or not you furnished an operator. Unless the terms of the written order are satisfactory to you, the same may be cancelled.

Yours truly,<br>
Cashier.

Plaintiff's Exhibit D.

February 7, 1927.

B. T. Moran, Inc.,<br>
Chicago, Ill.<br>
Gentlemen:

We received your invoice covering wallets and dime savers, plus letters and cards.

We notice a note at the bottom of this invoice saying that you will furnish an operator at the rate of twenty cents per wallet, or on *per diem* basis of $10 plus transportation to and from Joplin. Now this is not at all our agreement with you and we will not pay according to this note. We wanted your service, and still want it, but strictly on the basis that we bought same. If it is your intention to begin to hedge, we had better stop where we are.

Kindly let us hear from you by return mail in regard to which you wish us to do. If you prefer not to send an operator but still guarantee to take back the unused wallets and dime savers, it will be alright with us.

Yours truly,<br>
JOHN W. JONES, Cashier.

Plaintiff's Exhibit E.

February 10, 1927.

Joplin State Bank,<br>
Joplin, Missouri.<br>
Gentlemen: Attention Mr. Jones, Cashier.

In reply to your letter of the 7th instant we would say that the note in our invoice was not with any intent of hedging, but was

caused by our understanding of the matter. We understood from our representative, Mr. Carlin, that you were, of course, to have an operator, but that whether it would be at a per diem basis, or at our regular service fee, would be decided at the start of your campaign. Our Mr. Moran is out of town at present, but if you will write us in the meantime telling just what your understanding of the matter is, I am sure that upon his return, you will have no difficulty in reaching a satisfactory arrangement.

Your truly,

B. T. MORAN, Inc.

By D. S. KELLY, Sec.

Plaintiff's Exhibit F.

February 12, 1927.

B. T. Moran, Inc.
    Chicago, Ill.
Gentlemen: Attention: Mr. Kelly.

The following is copy of our contract with Mr. R. J. Carlin:

"The company will furnish the operator to manage campaign for which service the bank will pay ten cents per wallet ordered up to the time operator is withdrawn from the bank. This is to certify that I agree to take back at the end of six months all wallets left at initial order cost."

(Signed)   R. J. CARLIN.

We are very desirous of going ahead with this campaign immediately, so if this is not satisfactory please wire us to that effect immediately.

Yours truly,

JOHN W. JONES, Cashier.

Exhibit G.

February 16, 1927.

Joplin, State Bank,
    Joplin, Missouri.
Gentlemen: Attention Mr. Jones, Cashier.

The terms quoted in your letter of Feb. 12th are satisfactory to us, since they are the terms agreed upon. In looking further into the matter I find the mistake was made by our Mr. Carlin having an old contract book, which was printed before we found it necessary to change the price. So the fault was ours, not yours.

Will you advise me immediately when you will be ready to start your campaign, so that we can arrange to have our representative on hand. With best wishes for a successful campaign, we remain,

Yours very truly,

B. T. MORAN, Inc.

By. D. S. KELLY, Sec.

Plaintiff's Exhibit H.

March 1, 1927.

Joplin State Bank,
  Joplin, Missouri.
Gentlemen: Attention Mr. Jones, Cashier.

We have not heard from you in reply to our letter of Feb. 16 regarding the opening of your campaign. Will you kindly advise us at your earliest convenience when you will be ready to start so that we may have the operator available to take charge.

Sincerely yours,
B. T. MORAN, Inc.
B. T. MORAN.

Plaintiff's Exhibit I.

Joplin, Mo., March 3, 1927.

B. T. Moran, Inc.,
Chicago, Ill.
Gentlemen:

This letter is to inform you that we started our campaign something like a week ago. If you look in your files you will see that we wrote you asking that you wire us if the terms of our letter were not satisfactory to you. We seem to have a different understanding in regard to this and I received a letter from your company stating that they would do whatever the contract between the salesman and this bank authorized. The campaign is coming along nicely and we see no reason why you should go to the expense of sending an operator here. I see nothing in looking at the duplicate contract that would cause your company to have so many mistaken ideas about said contract as they seem to have had in this instance, but that is neither here nor there. We feel that we have lived up to this contract and we are going ahead with same.

Yours truly,
JOHN W. JONES, Cashier

Plaintiff's Exhibit J.

Chicago, Ill., March 7, 1927.

Joplin State Bank,
Joplin, Missouri.
Gentlemen:

Attention Mr. John W. Jones, Cashier.

Your letter of March 3rd has been received and we were surprised to learn that you had started your campaign without the service of an operator. We have of course, no objections to your doing this so long as you understand our guarantee to take back at cost any wallets left over after the campaign has been in operation six months was contingent upon your employing the services of one of our operators to manage the campaign.

You no doubt will get along all right by yourselves, but we know from experience that the success of any campaign of this kind depends to a very great extent on the way it is handled. That is the reason, and the only reason why we recommend that our customers use our operators rather than someone within the bank who may be inexperienced in salesmanship and not familiar with the best way to conduct a campaign.

We agree with you that there is no reason why there should be any mistaken ideas regarding the arrangement between your bank and this company, and insofar as the writer knows there was none.

The first of this year we were compelled, because of the expense involved, to change our operator's fee from ten cents per wallet to twenty cents and in your case the salesman either forgot all about this or neglected to change the price on his order book. That is all there was to it so far as mistaken ideas are concerned. All our customers have the option of paying for service at the rate of twenty cents per wallet, or on a basis of $10 per day for the actual time the operator remains in the bank. This explains a footnote which was added to your bill. In your case, however, we agreed that the old price of ten cents per wallet would prevail.

Now that you have taken things in your own hands we shall be glad to hear how you are getting along, just what you are doing, and the results you are getting. Please remember that we shall be glad to cooperate with you in every possible way. Don't hesitate to call upon us for any suggestion or help that we can give.

Sincerely yours,
B. T. MORAN, Inc.
B. T. MORAN.

Plaintiff's Exhibit K.

Joplin, Mo., April 8, 1927.

B. T. Moran, Inc.
Chicago, Ill.
Gentlemen:

If you will look in your files you will find a letter from us with the terms of our account with you.

We can use two hundred of your banks and wallets, but cannot use the other three hundred. You will see by our letter that you were to wire us if our terms were not satisfactory, which you did not do so.

We are ready to ship back the three hundred and remit for all the stationery, but would not be interested in the purchase of the total five hundred. We have opened up over a hundred accounts and think we will use two hundred and will be willing to pay for them.

Yours truly,
JOHN W. JONES, Cashier.

Plaintiff's Exhibit L.

Chicago, Illinois, April 12, 1927.

Joplin State Bank,
Joplin, Missouri.
Gentlemen:

Attention Mr. John W. Jones, Cashier.

Regarding your letter of the 8th instant we would refer to our letter of January 15th in reply to your letter of January 12th in which the terms and conditions of our agreement with you were specifically set forth; also to our letter of February 15th and March 1st requesting you to inform us when you will be ready to start your campaign, so that we could arrange to have our representative on hand to take charge of it in accordance with our agreement.

Our letter of January 15th constituted an acceptance of your order and plainly set forth the conditions on which it was accepted, and was followed by our subsequent communications February 15th and March 1st above referred to asking for information regarding the opening of your campaign which you failed to give us, thus making it impossible for us to carry out the terms of our agreement regarding the service of our representative to conduct the campaign.

On March 7th on learning that you had started the campaign yourselves without the service of our representative, we informed you that our agreement to take back wallets unused after a period of six months would not hold under those conditions. You had full and explicit notice that our agreement to do so was contingent upon the campaign being conducted by our representative, and when you undertook to disregard this condition you forfeited the right to make any such demand at this time. We believe in being absolutely fair with our customers and we also believe in insisting that our customers be absolutely fair with us. Therefore, please understand that we will expect you to pay for the 500 wallets we shipped you at the agreed price. We stand ready to do our part, and shall if you so desire, send an operator to conduct your campaign at the price agreed upon in our contract with you, namely: "ten cents per wallet ordered," over and above the purchase price of the wallets, letters and cards. This is absolutely final as far as we are concerned and we should appreciate it if you will let us hear from you promptly so that we may be advised regarding your position and know what to expect.

Very truly yours,

B. T. MORAN, Inc.

B. T. MORAN.

It is elementary law that there must be a meeting of the minds of the contracting parties before there is a binding obligation upon either of the parties. Let us consider the order, and the correspond-

ence in connection with this transaction, to see if we can ascertain just when there was a meeting of the minds, and what the terms of the contract were when they did meet.

There certainly was not a completed contract when the order was signed on January 11, 1927, either with or without the agreement to take back unused banks and wallets at the end of six months, for this order was executed by the cashier of the bank and Mr. Carlin, the representative of the company, with the understanding that it was conditioned upon the O. K. of the plaintiff, for it contained these words: "Remarks—Pending wire of O. K." That could be considered as nothing more or less than a conditional order, depending upon a wire of acceptance of a rejection of the terms, and was not such a meeting of the minds of the parties as to make a binding accepted contract. [Sarran v. Richards, 151 Mo. App. 656, 132 S. W. 285.] The cashier of the bank so understood it on January 12, 1927, for he on that day wrote and called attention to the additional writing on his copy of the order, and asked the company to mail its approval; on January 15, 1927, the plaintiff in answer to the letter of January 12, advised the defendant that under the conditions therein expressed it would take back the unused banks and wallets at the end of six months, and the expressed conditions were that the bank "continue an active campaign for six months, if necessary; use our plan of distribution in connection therewith, distributing all the letters and cards necessary to cover all your depositors; and that the campaign be managed by one of our experienced operators as provided for in your order" and further said, "on the presumption that this letter covers your requirements, we are proceeding with the preparation of the supplies you ordered, and they will be shipped as promptly as possible." The cashier wrote a letter on January 19, 1927, that the bank could not consent to the changes of terms suggested, and advised the plaintiff that its agent had said that it was optional with the bank as to whether or not an operator was furnished and advised that the order be cancelled if the terms were not satisfactory. Up to that time the parties had not agreed upon the terms, but the conditions of acceptance of the order had been plainly expressed by the plaintiff, and had been just as plainly denied by the defendant.

The next letter was from the defendant dated February 7, in which it acknowledged receipt of the invoice for the supplies, but called attention to the fact that there was a notation upon the invoice wherein the plaintiff was attempting to charge twenty cents per wallet for an operator to come to Joplin and conduct the campaign, and plainly stated that it would not pay that amount, but stated further that it wanted the service of the plaintiff, but strictly on the basis it was bought, and further in the letter this language was used: "If you prefer not to send an operator but to guarantee to take back

the unused wallets and dime savers, it will be alright with us." This clearly shows that the bank had understood that an operator was to be furnished, if the plaintiff was to take back the unused wallets, for it suggested that it would waive the furnishing of the operator if the plaintiff would guarantee to take back unused wallets at the end of six months.

On February 10, the secretary of plaintiff company wrote the defendant that the plaintiff understood that the bank was to have an operator to put on the campaign, but whether it would be at a *per diem* basis, or at the regular service fee would be decided at the start of the campaign, and suggested in that letter that Mr. Moran was out of the city, and asked that the defendant tell just what was its understanding of the matter. And on February 12th the defendant sent its letter marked Exhibit F, which copied the terms of the contract as left with it, and in that letter said: "We are very desirous of going ahead with this campaign immediately, so if this is not satisfactory please wire us to that effect immediately."

The record fails to show that the plaintiff wired as suggested in the above letter, but on February 16, several days before the defendant started its campaign, the plaintiff wrote a letter using this sentence: "The terms quoted in your letter of February 12th are satisfactory to us, since they are the terms agreed upon." And then explained that it was the company's mistake in trying to change the charge from ten cents to twenty cents per wallet for service charge. To us it appears clear that at this time the only controversy between the parties was whether or not the plaintiff would charge twenty cents or ten cents per wallet for the service charge of an operator, and when the plaintiff wrote that it would accept the terms of ten cents per wallet as offered by its agent instead of twenty cents as written in the note on its invoice the defendant then accepted the term of the contract as finally O. Ked by the plaintiff. That was when the minds of the parties finally met, and the contract was consummated. There is no letter of the defendant expressly accepting it, but the order had gone in, the correspondence had been over the conditions under which the supplies would be shipped, the final understanding of a service charge of ten cents per wallet had been reached, and the defendant accepted the shipment of supplies which acceptance was as binding as if the defendant had written a final letter of acceptance.

The defendant could hardly say that it accepted the shipment with the understanding that it was optional with it as to whether an operator should be used, for in the letter of February 16, the plaintiff used this language "will you advise me immediately when you will be ready to start your campaign, so that we can arrange to have our representative, on hand." And this letter was received at least

a week, and possibly two weeks, before the defendant started its campaign, for in defendant's letter of March 3, it said "We started our campaign something like a week ago" and when the cashier was testifying, when the trial court suggested that it would like to know when the work started, he said, "off hand I would say we started about March 3rd." But whether the campaign started March 5, or a week prior thereto, it was started more than a week after the defendant received plaintiff's letter of February 16, containing the final condition of ten cents per wallet as service charge, conditioned, as we think, that unused wallets would be taken back if an operator was used, and that they would not be taken back if the operator was not used. The acceptance and the use of the supplies under such conditions was just as binding upon the defendant as it would have been if the defendant had written a letter to that effect, and the defendant would not be permitted to accept said supplies under such conditions and use part of them, and at a later date change its mind about the matter and claim to be bound under other terms and conditions. [National Surety Co. v. Equitable Surety Co., 242 S. W. 109, 111, and cases cited.]

There is no difference in the testimony of plaintiff and the defendant. The testimony of both goes to show that there was a difference for a while, but that difference was settled before the supplies were accepted, and we think, since the testimony is all one way, that the court erred in refusing to give plaintiff's declaration of law numbered A, which was a declaration that under the pleadings and the evidence in the case, the verdict and judgment be for the plaintiff for the amount sued for in plaintiff's petition.

It is our opinion that the judgment should be reversed and the cause remanded with direction that a judgment be entered for the plaintiff for the amount sued for in plaintiff's petition, and it is so ordered.

*Cox, P. J.*, and *Bailey, J.*, concur.