LEY P. REXFORD, Doing Business as LEY P. REXFORD & COMPANY, Appellant, v. T. F. PHILIPPI and EXCELSIOR TOOL & MACHINE COMPANY, a Corporation.—84 S. W. (2d) 628.

Division Two, July 11, 1935.

390

*Green, Henry & Remmers* for appellant.

*Jones, Hocker, Gladney & Jones* and *Lon Hocker, Jr.*, for respondent; *Wheeler, Oehmke & Dunham* of counsel.

COOLEY, C.—Action *ex contractu* wherein plaintiff sought to recover a broker's commission of $10,000 for having procured for defendants a purchaser for the capital stock of defendant corporation,

Excelsior Tool & Machine Company. At the close of the evidence the court gave a peremptory instruction directing the jury to return a verdict for the corporation defendant, whereupon plaintiff took an involuntary nonsuit as to that defendant with leave to move to set the same aside. The case was submitted to the jury as to defendant Philippi and the jury returned a verdict in his favor. Plaintiff appeals. The controversy between the parties is over the question of whether plaintiff was employed to find a purchaser for the capital stock of the corporation, as he contends, or, as defendants contend, for the physical property, the "plant," of said corporation. Plaintiff urges on this appeal that the verdict in favor of Philippi is "palpably wrong and against the weight of the evidence and unsupported by any believable evidence," and that the court erred in an instruction given for defendant Philippi.

Philippi was president of the corporation. He had organized it and built up its business and at the time in question owned or controlled all of its capital stock. His testimony was that he owned all of the stock except a small portion held by his wife, but that he "controlled" all of it. Plaintiff testified that Philippi told him that he, Philippi, owned all of the stock. This discrepancy, however, has no material bearing on the issues here presented.

The alleged contract sued upon was oral. Plaintiff's testimony is to the effect that he was a broker and that about March 24, 1930, he had a conference with Philippi in which the latter authorized him to find a purchaser for the entire capital stock of the corporation at the price of $200,000, and agreed to pay him a commission of five per cent for so doing; that he did find and produce as such purchaser one Mahlon B. Wallace (his brother-in-law) who was ready, able and willing to buy the capital stock at that price; and that Philippi, after first accepting Wallace as a satisfactory purchaser, refused to sell. Plaintiff's evidence tends further to prove that in his first conversation with Philippi nothing was said about terms of payment, but that later Philippi said he would accept $25,000 cash and the remaining $175,000 in "deferred payments," and that plaintiff so presented the proposed sale to Wallace. The time and terms of the deferred payments were not then mentioned. About July 10, 1930, Philippi and Wallace were brought together and at that time, according to plaintiff's testimony "they discussed details about purchasing the business, and it was arranged and agreed that Mr. Wallace would buy the business for Mr. Philippi's price of $200,000; he would pay him $25,000 cash and he would give him notes to be payable on or before given dates satisfactory to Mr. Philippi, and Mr. Philippi said that was very satisfactory . . . and the arrangements were made." In answer to further questions plaintiff said that at that conference Wallace agreed "to buy the property

and pay $200,000 for it" and that Philippi agreed to sell it and deliver all the capital stock.

Mr. Wallace, testifying for plaintiff, said that the conversation at that time was about buying the capital stock and all of it, and that after some discussion he said to Philippi, "Well, I would be willing to pay you $25,000 cash and the balance as we agree upon in notes during a period of five years," and that Philippi said that would be perfectly satisfactory; "that was about all there was to it, except they (Philippi and plaintiff) left my office with the understanding that . . . they were going to have the papers drawn up necessary to conclude the understanding."

Oscar Rexford, a son of plaintiff, testified that he was present and heard the conversation between his father and Philippi when the alleged agreement of employment was made. Asked to relate the conversation, he said: "Why, father asked Mr. Philippi what authority he had for wanting to sell the business, and he said he wanted to move away from town, and father asked him if his authority was unanimous or if he held the entire capital stock, and he said he did, and father asked him how much he would take for it and he said $200,000, and I saw him write that down on a piece of paper on his desk." He testified that it was agreed that in the event of a sale his father was to receive five per cent of the sale price. These questions and answers followed: "Q. What was said in regard to what was to be included in the purchase price for this $200,000? A. My understanding was that he was selling— Q. Not your understanding, what was said? A. That he was selling all the capital stock; that he would sell the capital stock for the price of $200,000, which he wrote down on a piece of paper."

Mahlon B. Wallace, Jr., a son of the proposed purchaser, testified that he was present when the alleged sale agreement was made between his father and Philippi; that "the substance of the conversation was that father bought a business for two hundred thousand dollars." "Q. And what was to be transferred to him? A. The entire company."

On cross-examination he said: "Q. Now, Mr. Wallace, in answer to Mr. Green's question just a moment ago, you said the substance of what was said there was that your father bought a business for two hundred thousand dollars, didn't you? A. Yes, sir. Q. That was the fact, wasn't it; is that right? A. I am not sure that that might have been what I said, but as a matter of fact when I say the business I meant the company in its entirety."

A day or so after the conference of July 10th between Wallace and Philippi,—that which Wallace testified plaintiff and Philippi had left with the understanding that they were to "have the papers drawn up necessary to conclude the understanding"—Wallace and Philippi discovered that they had misunderstood each other;

the former contending that he understood he was purchasing the capital stock and the latter that he had not intended or agreed to sell the capital stock but understood that he had authorized plaintiff to find a buyer for and had offered to sell only the "plant,"— the physical property, and had all along so intended and so expressed himself. It appears from the evidence of both sides that the company then had on hand something over $80,000 in cash, besides some $40,000 in notes due it, most of which were for part of the sale price of a foundry which the company had sold a year or so previously for $100,000. These "quick assets," especially the cash, Philippi insisted he had had no thought of selling or of including in his offer to sell the plant or business for $200,000, and he refused to include them. When this misunderstanding developed the proposed transaction was abandoned. Wallace was "not interested" in buying what Philippi proposed to sell, and *vice versa*.

Philippi testified that he had not offered to sell nor authorized plaintiff to find a buyer for the capital stock and that he had not agreed with Wallace to sell him the capital stock; that he had authorized plaintiff to find and produce a buyer only for the machine shop or plant, and that his negotiations and tentative agreement with Wallace had been on that basis.

■ ■ I. Appellant's contention that the verdict is not supported by any substantial or believable evidence cannot be sustained. Without setting out in further detail the facts and circumstances shown in evidence we deem it sufficient to say that the record presents merely a case in which there is conflicting evidence, the weight of which was for the jury, and the jury believed that of the defendant. The action being one at law the verdict is conclusive on appeal as to the facts, if supported by substantial evidence, as we think it clearly is. Appellant argues among other things that Philippi could not have sold the machine shop or plant of the corporation, which he did not own, and therefore must have been offering to sell the capital stock, the only thing he owned and could sell. But he owned or controlled all the capital stock and was therefore in position to bring about a sale and conveyance of the plant. The corporation was solvent, having no creditors whose claims would afford an insurmountable obstacle to such sale and conveyance. It is not shown to have owed debts, except $10,257 of "accounts payable" and about $3000 referred to as "tax reserve," against which liabilities it had about $19,600 due it in "accounts receivable," "accrued interest" and "trade acceptances," besides owning the cash and notes above mentioned. On the other hand it is argued by respondents in favor of the reasonableness of Philippi's contention that he would hardly have been proposing to sell the capital stock, carrying with it all assets of the corporation, including over $80,000 in cash and $40,000 in notes, and to accept in payment only $25,000 in cash and the remain-

der in notes extending over a period of five years. Appellant's contention on this point seems to be in effect that Philippi's testimony is so unreasonable and so overwhelmingly contradicted by appellant's evidence as to be unbelievable, and therefore not to amount to substantial evidence. He quotes from Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 728, 62 S. W. (2d) 1079, 1080:

"The Supreme Court on appeal, as well as otherwise, ought to have and doubtless has the power to set aside a judgment and grant a new trial in spite of a jury verdict when the judgment is palpably and unquestionably wrong, a clear case of injustice, and not only against the weight of the evidence but unsupported by any believable evidence."

In that case, however, this court held that the facts did not bring it within the "limited class of cases protected by this rule," and further said, 333 Mo. l. c. 728, 62 S. W. (2d) l. c. 1082:

"The court has the right in any case to determine as a matter of law whether there is any substantial evidence to sustain an issue of fact; but, on determining that there is such substantial evidence, it will not go further and determine whether the weight of the evidence is in favor of or against the mooted fact. That is the province of the jury. It is merely the exercise of this same judicial power and function which enables the court to say as a matter of law in exceptional cases that the verdict of the jury is so manifestly unsupported by the believable evidence—so palpably against the overwhelming evidence to the contrary—that to allow the verdict to stand would be a travesty on justice. In any such case the court may properly reject evidence which is contrary to the physical facts or to known physical laws, or which is the result of evident mistake or ignorance, or, in short, when the evidence itself, or the other established facts, discloses its inherent infirmity. In doing this, however, the court does not weigh the evidence in the judicial sense of that term."

■ II. Appellant complains of the following instruction given at the request of defendant Philippi:

"The Court instructs the jury that if at the time the arrangement or agreement referred to in the evidence was entered into it was the understanding of plaintiff that he was to sell capital stock in the Excelsior Tool & Machine Company and it was the understanding of the defendant Philippi that he was to sell the physical property, good will and business of said company, and not said capital stock, then plaintiff is not entitled to recover, and your verdict must be for the defendant.

"The Court instructs the jury that the burden is on the plaintiff to establish to your reasonable satisfaction by the preponderance or greater weight of the evidence the facts necessary for him to re-

cover, to-wit, that on or about March 24, 1930, he and the defendant T. F. Philippi entered into an agreement wherein and whereby plaintiff was employed to sell or procure a purchaser for the capital stock of the Excelsior Tool & Machine Company at and for the price and sum of $200,000 and not merely the physical property, land, buildings, machinery and tools, and unless you find that plaintiff has so proven by the preponderance or greater weight of the evidence, plaintiff is not entitled to recover, and your verdict must be for the defendant.''

Appellant contends that the first paragraph of the instruction is erroneous ''in that it determines liability on the understanding of the parties, and not the contract;'' that ''The contract is not dependent on what one of the parties understood it to be, but upon what was actually said and done.'' Appellant cites especially Farley v. Pettes, 5 Mo. App. 262, and Law Reporting Co. v. Whitaker (Mo. App.), 254 S. W. 715. The latter case was based upon a written contract, there being no allegation or proof of fraud, and the court held that it ''must be construed and enforced according to the true meaning of the language used and may not be adjudged ineffectual because one of the parties to the contract meant or understood the language in a sense different from its true meaning.'' In the Farley case the agreement involved was oral. The court criticized an instruction somewhat similar to the one complained of in the instant case but in doing so said, 5 Mo. App. 1. c. 264:

''On the evidence, it was plain that the agreement was either that the money should be paid or the note of the company taken for building the sewer, and this was the single alternative presented. There was no reasonable foundation, on the evidence, for the hypotheses of misunderstandings and results, and this instruction served only to obscure the plain ones given.''

In order that there may be a contract it is necessary that there be a meeting of the minds of the contracting parties. The rule is thus stated in Huttig v. Brennan, 328 Mo. 471, 491, 41 S. W. (2d) 1054, 1062, quoting from 13 Corpus Juris 263, section 48:

''In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike there can be no assent, and, therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms.'' [See, also, Sutter v. Raeder, 149 Mo. 297, 50 S. W. 813; D. P. Moran, Inc., v. Joplin State Bank, 223 Mo. App. 848, 18 S. W. (2d) 554.]

In the instant case there was foundation in the evidence for the hypothesis that the parties had misunderstood each other as to what Philippi had offered to sell and the property for which he had authorized plaintiff to find a purchaser. Philippi denied that he had

ever proposed to sell the capital stock. Occasionally in his testimony he referred to what he had offered to sell as "the business," but generally as the machine shop or "the plant." Plaintiff, although contending that Philippi had employed him to sell the capital stock, referred several times to Philippi having used the word "business" or "property" in that connection,—terms which he may have understood to mean capital stock when Philippi had not so intended and had not used them in that sense. Those terms so used cannot be said necessarily to mean or imply a sale of the capital stock. In a letter plaintiff wrote Philippi shortly after their conference of March 24, in which he asked for certain information regarding Philippi's competitors, he used this language:

"Please understand that any and all information furnished us will be treated strictly confidential and for and in consideration of services rendered in this matter we are to receive reasonable compensation. In the event of the sale of the business our charges are five per cent."

He said nothing about a sale of the capital stock in that letter.

Plaintiff's son, who was present at the conference of March 24, testified, in relating the conversation, that his father asked Philippi about his authority to sell "the business." Mahlon B. Wallace, Jr., who heard the conversation between his father, the proposed purchaser, and Philippi, testified that "The substance of the conversation was that father bought a business for two hundred thousand dollars."

From the foregoing and other facts and circumstances shown in evidence it is apparent that the jury could have found under the evidence that the parties had misunderstood each other and had used language capable of being so misunderstood,—in short that there had been no meeting of minds as to the subject matter and terms of the proposed sale. The first paragraph of the instruction obviously was intended to submit that hypothesis. Under the evidence we think that as a legal proposition it was correct, and that, read in connection with the second paragraph and in connection with plaintiff's instruction, it was not calculated to mislead the jury. The second paragraph of defendant's instruction explains and applies the declaration contained in the first paragraph, by requiring the plaintiff to establish "the facts necessary for him to recover, to-wit, that . . ." he and the defendant, T. F. Philippi entered into an agreement," etc. Plaintiff's instruction submitting his case contains a similar requirement.

Appellant criticizes the second paragraph of defendant's said instruction, claiming that it placed upon him the burden of proving his case by *his own* evidence and precluded consideration by the jury of any evidence favorable to him introduced by defendant. [He

cites Barr v. Mo. Pac. Ry. Co. (Mo.), 37 S. W. (2d) 927, and Chaar v. McLoon, 304 Mo. 238, 263 S. W. 174, 177.] In the Barr case the burden of proof instruction condemned told the jury that if the credible evidence *offered on behalf* of the plaintiff was equally balanced with the credible evidence *offered on behalf* of the defendant the plaintiff could not recover. The criticized instruction in the Chaar case was somewhat similarly worded and was held to be misleading under the facts of that case. The instruction in the instant case is not so worded. It tells the jury that the burden is on the plaintiff to establish the facts necessary to his recovery by the "preponderance or greater weight of the evidence," which means the preponderance or greater weight of all the evidence. [Blankenship v. St. Louis Pub. Serv. Co. (Mo.), 71 S. W. (2d) 723, 726 (3, 4).] Similar instructions on burden of proof were held not prejudicially erroneous in the Blankenship case and in Bleil v. Kansas City (Mo.), 70 S. W. (2d) 913. See, also, Mitchell v. Dyer (Mo.), 57 S. W. (2d) 1082, 1083, and cases cited in Blankenship and Bleil cases, supra. We think the instruction complained of in the instant case was not prejudicially erroneous.

III. In his assignment of errors appellant says that the court erred in giving the peremptory instruction in favor of defendant Excelsior Tool & Machine Company. No point is made as to this action of the court in appellant's points and authorities. This assignment is not briefed nor is it referred to in the points and authorities. We think said instruction was properly given but we do not feel called upon to discuss it because appellant has not briefed it nor even brought it forward in his points and authorities. [See Scott v. Mo. Pac. Ry. Co., 333 Mo. 374, 389, 62 S. W. (2d) 834, 840; Pence v. K. C. Laundry Service Co., 332 Mo. 930, 944, 59 S. W. (2d) 633, 639; Aulger v. Strodtman, 329 Mo. 738, 741, 46 S. W. (2d) 172, 173.]

The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.