FRANK CHAAR and ANNA CHAAR, His Wife, Appellants, v. PETER McLOON.

Division One, June 10, 1924.

1. **NEGLIGENCE: Automobile: Oblivious Children in Street: Case for Jury.** Where the roadway on the outskirts of the city was frequently and had for a long time been habitually used by pedestrians, and plaintiffs' nine-year-old son and two other small boys were standing on the asphalt part thereof along which defendant's automobile was approaching at a speed of twenty miles an hour and were bound to be struck by it unless they moved or he stopped his car or changed its course, his testimony that he saw them when he was

Chaar v. McLoon.

150 feet away, and the testimony of others that the boys did not see him or look in his direction as he approached, that there was nothing to obstruct his view, that they were oblivious of his approach, that he sounded no warning, did not check his speed, did not turn to either side until he was within two or three feet of them, and struck plaintiffs' son and another of the boys with the right-hand fender, make a case for the jury under the humanitarian rule.

2. ——⌐—: ———: **Instruction: Accident.** An instruction telling the jury that if plaintiffs' son "was killed solely by reason and on account of an accident" plaintiffs cannot recover, and defining "accident" to mean "such unavoidable casualty as occurs without anybody being negligent in doing or permitting to be done or in omitting to do the particular thing that caused such casualty," in a case in which there is no evidence of any cause of the injury save the negligence of the defendant and the negligence of the child, and plaintiffs seek to recover under·the humanitarian rule on the theory that defendant ran his automobile at a rapid speed upon their oblivious child standing in the street, without warning or any attempt to avoid striking him, after he had seen the child's peril, brought into the case an irrelevant issue and invited the jury to enter a field of conjecture and speculation, and its giving at defendant's request was error against plaintiffs.

3. ———: ———: ———: **Warning to Pedestrian Only.** The statute (Sec. 7576, R. S. 1919) required that every person operating a motor vehicle shall sound its bell, gong, horn, whistle or other device "whenever necessary as a warning of danger;" and where the three small boys were in a traveled street and indicated by their movements that they were oblivious of the approach of defendant's automobile, and, although he saw them 150 feet away, and their actions showed plainly that they were on the point of running across his path, he proceeded at high speed, without warning of any kind, or checking his speed, or changing his course until he was within two or three feet of them, an instruction telling the jury that it was defendant's duty to give warning only to "pedestrians" and that if the nine-year old boy was not "a pedestrian upon said road or traveling on said road and was not·walking thereon" plaintiffs could not recover damages for his death, was error.

4. ———: ———: ———: **Burden of Proof: Plaintiffs' Evidence Alone: Contributory Negligence.** An instruction on the burden of proof which tells the jury that "the evidence for plaintiffs must outweigh that for defendant" and that, "therefore, if you are unable to decide whether plaintiffs' evidence predominates, or if you believe and find that the evidence for the plaintiffs and the evi-

dence for the defendant are equally balanced, it is your duty to find the issues for the defendant," is erroneous, where much of the evidence favorable to plaintiffs' recovery comes from defendant's witnesses, since the words "plaintiffs' evidence" to the ordinary layman would mean only the evidence of witnesses introduced by plaintiffs. Said instruction is further erroneous in placing upon plaintiffs the burden of disproving defendant's plea of contributory negligence.

Headnotes 1 and 3: **Motor Vehicles:** 1, 28 Cyc. 49; 3, 28 Cyc. 34, 49. Headnote 2: **Motor Vehicles,** 28 Cyc. 49; Trial, 38 Cyc. 1618. Headnote 4: **Motor Vehicles,** 28 Cyc. 47, 49; Trials, 38 Cyc. 1749.

Appeal from St. Charles Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

REVERSED AND REMANDED.

*John T. Manning, William Waye, Jr.,* and *Earl M. Pirkey* for appellants.

(1) Where the only question is that of negligence *vel non,* it is reversible error to give an instruction on the subject of accident. Lamar v. Morton Salt Co., 242 S. W. 690; Turnbow v. Dunham, 272 Mo. 65; Beard v. Railroad, 272 Mo. 156, 2; Bethurkas v. Railway Co., 249 S. W. 439. (2) An instruction which exonerates a defendant if deceased went in the path of the vehicle at such a distance that defendant did not have time to stop before the collision is incorrect, because it ignores the question of excessive speed. Abramowitz v. United Railways Co., 214 S. W. 120; Mason v. United Railways Co., 246 S. W. 325. (3) It is reversible error to give an incorrect instruction at the request of the successful litigant, or of the court's own motion, which conflicts with a correct instruction given at the instance of the losing party. Mansur-Tibbits Imp. Co. v. Ritchie, 143 Mo. 612; State ex rel. Central Coal and Coke Co. v. Ellison, 270 Mo. 645; Easton-Taylor Trust Co. v. Loker, 205 S. W. 87; Flintjer v. Kansas City, 204 S. W. 951; Martmow-

sky v. City of Hannibal, 35 Mo. App. 70; Desnoyers Shoe Co. v. Lisman & Ramsey, 85 App. 345; Sheperd v. Transit Co., 189 Mo. 373; Wallack v. Transit Co., 123 Mo. App. 167; Porter v. Mo. Pac. Ry. Co., 199 Mo. 83. (4) An instruction cannot be broader than the pleadings or proof. State ex rel. v. Ellison, 270 Mo. 653; Degonia v. Railroad, 224 Mo. 589.

*Joseph C. McAtee* and *P. S. Terry* for respondent.

(1) It requires more than the showing of a mere possibility that the accident might have been avoided in order to bring the case within the "humanitarian" or "last chance" doctrine. If the utmost that can be said of plaintiff's evidence is that it tends to show that defendant was guilty of negligence, while it shows the deceased's own negligence conspicuous in not looking for the approaching car, the plaintiff is not entitled to have submitted to the jury the question of last chance. A mere error of judgment committed under stress of exciting and imminent danger in an honest and spontaneous effort to avoid injury is not alone proof of negligence. Markowitz v. Railroad, 186 Mo. 350, 359. Finn v. United Railways, 237 S. W. 886; Jackson v. Railway, 157 Mo. 621, 645; Grear v. Harvey, 195 Mo. App. 13; Griffin v. Transfer Co., 193 S. W. 811; Rollison v. Railway, 252 Mo. 525, 543; White v. Railway, 159 Mo. App. 513; Chappell v. United Ry., 174 Mo. App. 126, 135. (2) "Where a person is crossing a street and is injured by a vehicle on the street, it is proper to give an instruction on accident." Henry v. Railway Co., 113 Mo. 525, 537; Feary v. Railway Co., 162 Mo. 75, 99; Webb v. Baldwin, 165 Mo. App. 240, 251; Boland v. Missouri Railroad Co., 36 Mo. 484; Sawyer v. Railroad, 36 Mo. 241, 260; Maxey v. Railway Co., 95 Mo. App. 303, 309. (3) "The burden is on the one suing for a negligent injury to prove his case by a preponderance or greater weight of the evidence." Giles v. Railway, 169 Mo. App. 24; Burns v. Railway Co., 176 Mo. App. 330; Rogers Packing Co.,

180 Mo. App. 227; Mullery v. Telephone Co., 180 Mo. App. 128; Whitesides v. Railway, 186 Mo. App. 609; Pippin v. Const. Co., 187 Mo. App. 360; Scott v. Smelting Co., 187 Mo. App. 344. (4) "Every person operating a motor vehicle shall sound said bell, gong, horn, whistle or other device whenever necessary as a warning of danger, but not at other times or for any other purposes." Sec. 7576, R. S. 1919.

JAMES T. BLAIR, P. J.—Frank Chaar, Jr., aged nine years and ten months, was struck and killed by an automobile driven by respondent. His parents brought this action for damages. The jury returned a verdict against them, and they appealed. A number of errors are assigned. Respondent contends there was no error and, in any event, the judgment should be affirmed on the ground that no case was made for the jury.

The petition contains (1) allegations which state a case under the humanitarian doctrine, and allegations that respondent (2) operated his automobile at a negligent and dangerously high rate of speed; (3) negligently failed to sound the horn or give other warning of approach; (4) and negligently failed to stop or turn aside or check his speed; and alleges these negligent acts were the cause of the child's death. The fourth allegation is coupled with a repetition of allegations under the doctrine under which the first charge of negligence is drawn. The answer first denies the allegations of the petition and then avers (1) that the boy's death resulted from his own negligence, "directly contributing thereto," in jumping suddenly in front of the automobile respondent was driving.

The evidence was quite conflicting. Applying the approved rule (Buesching v. Laclede Gaslight Co., 73 Mo. 219) and stating the evidence in accordance with it, there was substantial evidence to prove appellants' case. The automobile involved was a large, seven-passenger, 1917 model, Jeffrey's car, and was owned and was being driven by respondent. His wife and sister-in-law were

in the back seat.   The back curtains were on.   Lemay
Ferry road runs about north and south, and respondent
was driving northward upon that thoroughfare.   On its
west side, and in the highway, there are car tracks.
Next to these and east of them is an asphalt driveway
fifteen or twenty feet wide.   The evidence varies.   Just
east of this driveway the street is unimproved for a
width of eleven or twelve feet, and adjoining this there
is a pathway used by pedestrians and called a ''side-
walk.''   Hoffmeister Avenue crosses. Lemay Ferry road.
To the north, the next east-and-west street is Louisa Ave-
nue, which runs east from Lemay Ferry road, but does
not cross it.   The distance between the north line of
Hoffmeister Avenue and the south line of Louisa Ave-
nue is 250 feet.   Between these avenues, and on the east
side of Lemay Ferry road, are several improved lots.
The roadway in this block is frequently and habitually
used by pedestrians and has been so used for a long
time.   There is a ''medium'' down-grade from Hoff-
meister to Louisa Avenue.   The child was struck at a
point on the asphalt driveway 162 feet north of the north
line of Hoffmeister Avenue.   At that place the distance
from the west side of that driveway to the west side of
the Lemay Ferry road is thirty-eight feet and four
inches.   The distance from the east side of the asphalt
driveway to the path or ''sidewalk'' is eleven feet and
eleven inches, and the distance from the west side of the
sidewalk to the building line on the east is six feet and
nine inches.   A furniture truck was moving south along
the west side of the asphalt driveway.   Respondent was
driving north along the east side of the same driveway.
There is eye-witness testimony that as respondent crossed
Hoffmeister Avenue, going north, the three boys were
standing in the middle of the asphalt driveway 162
feet north of the north line of Hoffmeister avenue;
that they were looking toward the east; respondent ad-
mits he saw them at a distance of 150 feet, though he
says they were on the east side of the asphalt driveway,
''you might say up against this asphalt, very close to

it.'' He says two of the boys were looking east and the ''other little fellow was standing kinda facing them.'' There is other testimony that the three boys were standing about seven and one-half feet west from the east edge of the asphalt driveway when appellant crossed Hoffmeister Avenue, and that he was driving north on the same driveway about three feet from its east edge; that the boys continued to look toward the east and at no time looked in the direction of respondent's approaching car, and that respondent continued to drive toward the boys without sounding any warning or checking his speed of twenty miles per hour, and without turning out on either side until he reached a point within two or three feet of the boys. The evidence tended to show that from the point, in the east half of the asphalt driveway, 162 feet north of Hoffmeister Avenue, at which the boys were standing when respondent crossed that street, they started to walk slowly to the east and that they were struck by the right-hand fender and thrown off of the east side of the driveway nearly or quite to the edge of the sidewalk. There was also evidence for respondent that the boys moved from a place of safety into the path of the approaching automobile too late for the driver to avoid striking them. There was also evidence that their actions before they so moved showed that they were about to run into the street in front of respondent's car. The question as to the sufficiency of the evidence to support a verdict does not require a detailed statement of the evidence tending to prove facts which would exculpate respondent. Some further details are stated in another connection.

Appellants urge that certain given instructions were erroneous. Respondent contends the instructions were correct and that, in any event, no case was made for the jury.

I. Respondent's contention that no case was made for the jury is founded upon evidence he offered. If these boys, as the direct testimony tends to prove, were

standing in the asphalt roadway, seven and one-half feet west from its east edge, when respondent crossed <span>Case for Jury.</span> Hoffmeister Avenue 162 feet away, and he was driving along the same roadway three feet from its east edge, they were then in the path along which he was moving toward them, and unless they moved or he changed his course or stopped he was bound to strike them. The jury would have been justified in accepting his testimony that he saw them 150 feet away and in rejecting his testimony as to their position at that time. Respondent's testimony tends to show the boys did not see him as he approached them, and there is testimony of several other witnesses that they never did look in his direction, but, as he says of the two who were struck, they looked to the east. There is no testimony they saw the car until it was upon them. The testimony is ample to sustain a finding that there was nothing to obstruct respondent's vision, and he does not claim there was. If the testimony of some of the witnesses is to be believed, and that was for the jury to decide, when the two boys who were struck started walking toward the east they did not move into the path of the car in such sense as to bring into operation the rule which respondent invokes. They were already in the path of the car and had been at least since respondent crossed Hoffmeister Avenue, according to this testimony, and were oblivious of respondent's approach and merely moved from one point in respondent's path to another point in the same path. If the jury found all these facts, and there was evidence tending to prove them, then a case was made for their consideration. The question whether they would find these facts or believe the testimony which tended to exculpate respondent was one for them to decide under correct instructions as to the applicable law. Whether the instructions were correct is the question in this case.

II. The court instructed the jury that: ''If you shall believe and find from the evidence that plaintiffs'

son was killed solely by reason and on account of an accident, then plaintiffs cannot recover and your verdict must be for defendant. By the term 'accident' is meant such unavoidable casualty as occurs without anybody being negligent in doing or permitting to be done or in omitting to do the particular thing or things that cause such casualty." Other instructions submitted to the jury the question whether the boy's death was due to the negligence of respondent, his own negligence or the negligence of both.

*Accident.*

By force of its definition of "accident" the quoted instruction does not apply to any theory of the facts which includes negligence on the part of any one. By its terms it told the jury that it might find for respondent on the theory that there was no negligence, either by omission or commission, on the part of "anybody."

In this case there is a simple controversy with respect to the fact whether negligence of respondent was the cause or whether the child, too late for him to be saved, suddenly moved from a place of safety into the path of the automobile. There is no evidence of any cause of the injury save the evidence of the negligence of respondent and the negligence of the child. There is no evidence, or lack of evidence, which let in an issue as to "the happening of an event proceeding from an unknown cause." [Zeis v. Brewing Assn., 205 Mo. l. c. 651.] The real contest concerned merely the credibility of witnesses. The instruction introduced an issue not made by the evidence and not mentioned in the pleadings and authorized a verdict for respondent on a theory not warranted by the record. It invited the jury "into a field of conjecture and speculation." [Wise v. Transit Co., 198 Mo. l. c. 559, 560; Beave v. Transit Co., 212 Mo. l. c. 355, 356; Felver v. Railroad, 216 Mo. l. c. 209, 210.] It is error to give such an instruction in such circumstances. [Simon v. Railway, 178 S. W. l. c. 449, 450; Turnbow v. Dunham, 272 Mo. l. c. 65; Beard v. Railroad, 272 Mo. l. c. 156; Lamar v. Morton Salt Co., 242 S. W. l. c. 691, and cases cited; Bethurka's v. Railway, 249

S. W. 1. c. 439.] In this case in which the evidence so sharply conflicted and in which there was so much direct contradiction of each other by the witnesses, the jury's difficulties were enough without the interjection of this matter of "conjecture and speculation" further to confuse their consideration of the case. The assignment must be sustained. [Bethurkas v. Railway, supra.]

III. At respondent's instance the following instruction numbered 10 was given:

"You are instructed that it is the duty of every person operating a motor vehicle on a public highway in this State to sound a bell, gong, horn, whistle or other device whenever necessary as a warning of danger to pedestrians, upon the traveled part of said Warning to highway, but not at other times or for any Pedestrian Only. other purpose. And if you further find and believe from the evidence that Frank Chaar was not at the time that defendant approached the place where plaintiffs' child was struck and hit, a pedestrian upon said road or traveling on said road and was not walking thereon, then it was not necessary for defendant to have sounded the horn of his machine, and his failure to do so, in such situation was not negligence."

Thought since repealed, Sections 7576, 7585 and 7593 were in force when Frank Chaar, Jr., was killed. Section 7576 required every motor vehicle driven on public highways to be equipped with a signaling device adequate "to give warning of the approach of such vehicle to pedestrians and to riders or drivers of animals or of other vehicles and to persons leaving street, interurban and railroad cars. Every person operating a motor vehicle shall sound said bell, gong, horn, whistle or other device whenever necessary as a warning of danger, but not at other times or for any other purpose." Section 7585 provided that "every person operating a motor vehicle on the public highway of this State shall drive the same in a careful and prudent manner, and at a rate of speed so as not to endanger the property of another or

the life or limb of any person,'' and then provided that a stated speed for a given distance shall be ''presumptive evidence'' of negligence. Section 7593 provided that: ''Any person operating a motor vehicle upon approaching a pedestrian who is upon the traveled part of the highway and not upon a sidewalk, shall slow down and give an audible signal with his signal horn.''

There was testimony by respondent's witnesses which would support a finding by the jury that as he approached from the south the boys were standing on the east side of the street near the line which divided the ''sidewalk'' from the dirt roadway which lay between the sidewalk and the asphalt driveway along which respondent was driving; there was direct testimony that the movements of the boys showed they were getting ready to run into the street and across to the west side of the asphalt driveway in order to get on the furniture truck which was then approaching along the west side of the asphalt driveway, with its horn sounding; that when the truck was half a block north of the children they were looking toward the truck and it ''was plain'' that they were going to run out to it—''anybody could see that; you could look and know they were going to start;'' that the truck was running seven or eight miles an hour; that respondent sounded no warning. As to his speed there was testimony he was running eight, twelve, fifteen, eighteen and twenty miles per hour. He admitted he saw the boys when he was as much as 150 feet away. If the jury believed this testimony, it was respondent's duty to sound a warning since the testimony and the circumstances tend to prove the boys were observably oblivious of respondent's approach, that he saw them, that their action showed plainly they were on the point of running across respondent's path in order to reach the truck which was nearing them, and that respondent neither sounded a warning, checked his speed nor changed his course until the children were within two feet of the fender which hit them. If the law permits one to go unscathed against whom such facts are proved,

no authority for it has been cited. Instruction ten told the jury it was not negligence for respondent to proceed as the evidence just stated would authorize the jury to find he did proceed, however clear it was that the boys were about to run from the edge of the dirt roadway onto the asphalt roadway, and however clearly respondent saw they were about to do so, and however obvious was their obliviousness of his approach and at whatever distance he was from them when this all appeared to him; and, further, easily might be understood to authorize a verdict for him if at any time, during his approach, even at a considerable distance, the children were not actually *walking* in the street. The statute requires a warning "whenever necessary as a warning of danger." The instruction is not dependent upon any other instruction. It is complete in itself. It is erroneous. It may be added that the instruction uses the name "Frank Chaar" in a confusing way.

IV. Instruction 7 is on the burden of proof. It states, among other things, that plaintiffs "must prove their case by a preponderance or greater weight of evidence," defines terms, and instructs that "the evidence for plaintiffs must outweigh that for defendant. If, therefore, you are unable to decide whether plaintiffs' evidence preponderates or if you believe and find from (that?) the evidence for the plaintiffs and evidence for the defendant are equally balanced, then it is your duty to find the issues for the defendant." This instruction is misleading in this case. While a trained lawyer might conclude that the words "plaintiffs' evidence" meant the evidence favorable to plaintiffs, no matter by whom introduced, yet those words ordinarily are understood by both lawyers and laymen to mean the evidence introduced by plaintiffs. In this case much evidence favorable to appellants' recovery came from respondent's witnesses. That this instruction would strongly tend to exclude this last from consideration by the jury in appel-

*Burden: Plaintiff's Evidence Alone.*

lants' behalf in determining the preponderance of the evidence seems evident. An instruction with such a tendency should not have been given. In addition, respondent's instruction numbered 8 was upon the subject of contributory negligence. This was aimed at some issue other than that under the humanitarian doctrine. The last sentence in instruction 7 took no cognizance of the fact that the burden of proof on the issue of contributory negligence was on respondent. It covers all issues and is not confined to "plaintiffs' case." In necessary effect, it casts upon plaintiffs the burden of disproving the defense of contributory negligence invoked by Instruction 8. Respondent's negligence in failing to comply with the statute was a thing the evidence authorized the jury to find was admitted. [Raymen v. Galvin, 229 S. W. l. c. 749.]

There are other interesting questions raised concerning the instructions, but these are not likely to arise on another trial and need not be specially discussed.

The judgment is reversed and the cause remanded. All concur; *Graves, J.,* in result.