JOHN A. HOGAN, Appellant, v. KANSAS CITY PUBLIC SERVICE COMPANY.—19 S. W. (2d) 707.

Court en Banc, May 25, 1929.

1104

*Kelly, Buchholz, Kimbrell & O'Donnell* for appellant.

*Charles L. Carr* and *Watson, Gage & Ess* for respondent.

ELLISON C.—The plaintiff, a Kansas City police sergeant, sues for $50,000 damages for personal injuries sustained February 16, 1921, in a collision between a police patrol motor wagon on which he was riding and a street car operated by the receivers of the Kansas City Railways Company. The trial below resulted in a verdict for defendant and the plaintiff appeals, complaining of the giving of eight certain instructions for the defendant and of the refusal of one instruction requested by him.

The case has been tried in the circuit court three times, and thrice appealed. On the first trial a demurrer to the evidence was sustained and the Kansas City Court of Appeals reversed and remanded the cause, as reported in 218 Mo. App. 172, 265 S. W. 875. (The amount sued for was then only $7500.) At the second trial the plaintiff had a verdict for $15,000 and the (then) defendant receivers appealed. This division reversed and remanded the cause for failure to give an instruction requested by the defendants, as more fully appears from the report of the case in 317 Mo. 524, 297 S. W. 404. After this second appeal and before the third trial nisi the Kansas City Public Service Company became the owner of the street car system and assumed liability for the casualty. It was, therefore, substituted as defendant and is respondent here.

We are now called upon to decide whether the case shall be sent back for a fourth trial, again because of error in the instructions. Regrettable as it is that the litigation should be thus protracted, we are driven to the conclusion that this must be done. In giving our reasons it will be necessary to go over much ground covered by the former opinions, but the statement of facts will be condensed as much as possible.

The collision occurred during the busy noon hour of a clear day on Grand Avenue between Tenth and Eleventh Streets, one of the most congested sections of Kansas City. Grand Avenue there runs north and south, and is sixty-four feet wide between sidewalks. Along the center line of this vehicular traffic space were two parallel street car tracks, the east one for northbound cars and the west one for southbound cars. On the west side of the west car track and about one and one-half feet therefrom was a wooden platform about four feet wide and nine inches high, which served as a loading and unloading dock and safety zone for street car patrons. This platform was long enough for two street cars, which would be about 100 feet, and appears to have extended from about the center of the block south toward Eleventh Street. The block is 384 feet long, so the south end of the dock was ninety-two feet or more north of Eleventh Street.

There was a similar platform on the east side of the east car tracks, but located further north. Apparently the north end of the west platform was about even with the south end of the east platform, though the evidence is not clear as to the north and south position of these platforms in the block. Some of the testimony was that both platforms were nearer Tenth Street than Eleventh Street. From the east edge of the west platform to the west side of a street car on the east track the distance was ten feet, or very close to that. The distance between the two platforms, if they were opposite each other any part of their distance, was seventeen feet and eight inches or thereabouts. The distance from the west edge of the west platform to the east curb of the sidewalk on the west side of Grand Avenue—across the space used by ordinary southbound vehicles— was about twenty feet and six inches.

The patrol wagon was going south on Grand Avenue in response to a call to police headquarters, the nature of which had not been disclosed to the appellant. It was traveling a little to the right of the middle of the street, about astride the west rail of the west street car track. The appellant was on the driver's seat to the right of the chauffeur, a man named Pyeatt, but testified he had no control over the chauffeur's driving. Both were in police uniform. It is not disputed that the police siren was being sounded intermittently, but there is sharp conflict in the evidence regarding the speed of the wagon as it approached the point of collision, which was a few feet south of the north end of the west loading platform. The appellant testified it was going twelve to fifteen miles per hour; the chauffeur said seventeen to twenty miles per hour, and that he could have stopped within twenty or twenty-five feet. The respondent's witnesses fixed the speed at from thirty-five to fifty miles per hour, and this seems more nearly correct, as the patrol wagon was prac-

tically demolished and the street car substantially damaged in the collision, though the latter was moving slowly and had nearly stopped. Other circumstances point to this same conclusion.

There was heavy traffic on Grand Avenue at the time, a considerable number of vehicles moving north and south, and a much larger number of pedestrians on the sidewalks and crossing the street, back and forth. There were, too, a number of people on the west loading platform and people passing between it and the adjacent sidewalk. Automobiles were parked at the curbs on both sides of the street, but not along the space west of the west loading dock. There, according to the testimony of some of the witnesses, building operations were in progress and building materials and temporary structures extended out into the street, leaving a narrow space (out to the west loading platform) along which ordinary southbound vehicular traffic was supposed to pass. There was, however, substantial evidence to the contrary, that this part of the way was clear.

The appellant testified he first saw the street car just after the patrol wagon had crossed Ninth Street. This was over a block north of the point of collision. The street sloped very gently to the south; nothing in the contour obstructed the view. The street car was then about a car-length (47 feet) south of the south end of the west loading dock, which would put it barely north of the Eleventh Street intersection. This coincides rather closely with the testimony of the traffic officer stationed at Eleventh Street, who said that just after he blew his whistle allowing the street car to go north across Eleventh Street he heard the siren of the patrol wagon sounded up between Ninth and Tenth Streets. The police chauffeur stated the street car was south of the south end of the loading platform or nearly so when he first saw it, at which time he was 200 or 250 feet further north. The street-car motorman did not see the patrol wagon until after both the car and the wagon were in the block where the collision occurred. He had not heard the police siren, and did not realize it was a police car until just before the collision, as will be later explained.

When the police patrol neared the west loading dock it continued straight south, following the street car track as theretofore, which took it to the left of the dock, instead of around to the right along the pavement adjacent to the sidewalk where ordinary vehicles travelled. This, the chauffeur said, was because there was less traffic in the middle of the street, and because it was customary for other vehicles to pull to the right curb and stop on the approach of a police patrol. The street car was coming northward at eight or ten miles per hour preparatory to stopping for the discharge of passengers at the east loading dock. The appellant and the chauffeur saw

it, but assumed it would stop in obedience to an existing custom requiring street cars to stop for police and fire wagons and ambulances on the sounding of the siren. However, the chauffeur testified he would have gone on regardless of whether the street car stopped or not.

He did go on, and when the patrol wagon and street car were about twenty feet apart, or less, an old man stepped off the west loading platform and started east across the street. The chauffeur swerved the patrol wagon to the left or east in an ineffectual effort to avoid striking him and collided with the street car head on. The street car motorman had not noticed the patrol wagon particularly until it made this sudden change in course. He put on the emergency brakes and had stopped the car, or about stopped it, at the time of the collision.

The appellant's petition pleaded: (1) an ordinance of Kansas City giving police patrols the right of way in any street; (2) a long standing custom, relied on by the appellant, for motormen to bring street cars to a stop and thus give the right of way when a police patrol was approaching. Following this is a recital that on the occasion in question the appellant and the chauffeur, while on a police emergency call, were approaching the leading docks on Grand Avenue and that the space between the docks was too narrow to permit a rapidly moving southbound patrol wagon and a northbound street car to pass therein in safety, after which the petition continues:

"That as they were driving through said narrow passageway between the board sidewalks at or near 10th Street and Grand Avenue, as aforesaid, a street car northbound approached the opening between said sidewalks and it was the duty of the driver of said street car to stop said street car and permit the said police patrol to have the right of way through said opening between the sidewalks aforesaid; that the driver of said street car knew before he drove his street car into the narrow space between said board sidewalks, or, by the exercise of ordinary care, might have known, that said police patrol was proceeding through the opening between said sidewalks at a very rapid pace, and that the driver of said police patrol expected the driver of said street car to stop at a point south of said board sidewalks and to give the said police patrol the right of way through said opening, but that the driver of said street car carelessly and negligently failed to stop said car and drove the same at a rapid pace northward over the northbound tracks, and between the board sidewalks aforesaid, so that the police patrol in which plaintiff was riding and the street car so negligently driven into said space between said board sidewalks, came into collision. . . ."

The ordinance as introduced in evidence was in part as follows:

"Sec. 5—Police, fire departments, fire patrol, United States mail vehicles and ambulances shall have the right of way in any street.

"That upon the approach of any fire apparatus, police patrol or ambulance, every vehicle shall draw up as near as practicable to the right curb of the street and remain at a standstill until such apparatus, patrol or ambulance shall have passed.

"The driver of a street car shall immediately stop his car and keep it stationary upon the approach of any fire apparatus.

"Sec. 6—Street cars shall have the right of way, between cross streets, over all other vehicles, except as provided in Section 5."

The foregoing is an outline of the facts. Others will be noted in the course of the opinion as necessary.

I. Appellant's first assignment is that the court refused to give his Instruction P-4. This instruction set out sections 5 and 6 of the ordinance as hereinbefore quoted and then proceeded:

"You are therefore instructed that under said ordinance it was. the duty of the street-car motorman to yield the right of way to the patrol wagon on which plaintiff was riding *in any manner that by the exercise of ordinary care he could yield the said right of way, and to bring said street car to a stop, if necessary, in order to yield said right of way;* and if you find from the evidence in this case that said motorman negligently neglected to yield said right of way *as hereinbefore mentioned,* and if you also find that as a direct result of such negligence the collision between the police patrol and the street car mentioned in evidence was caused and that plaintiff was in the exercise of such care for his own safety as could be ordinarily exercised by a reasonably prudent person under the same or similar circumstances then your verdict must be for plaintiff." (Italics ours.)

(a) We think the abstract proposition of law stated in the instruction is correct. It told the jury the motorman should have stopped the car if stopping was necessary to yield the right of way; and we cannot see how the correctness of that declaration can be doubted, since the ordinance expressly and unconditionally gives patrol wagons the right of way over street cars. But respondent vigorously contends the instruction violated the rule of *stare decisis* in that it is in direct conflict with the opinion of this court when the case was here before. It is true the former opinion remanded the cause for failure to give defendant's Instruction D-2 (317 Mo. l. c. 540, 297 S. W. l. c. 411) which told the jury the ordinance did *not* require a motorman to stop his street car when meeting a police patrol; but that ruling was based on contentions different from those made now. A reading of the opinion will dis-

close the point then at issue was whether the ordinance imposed an absolute and unconditional duty to stop as and when meeting fire apparatus. And so, while the instruction there upheld was broad, we cannot say the former ruling is impeached by this one. But even if it were otherwise, we would be obliged to correct the error since a failure to do so would inflict serious injustice on one of the parties, and the matter involves an important legal question—the construction of a traffic ordinance of a busy city. [Murphy v. Barron, 286 Mo. 390, 400, 403.]

(b)  But notwithstanding all this we must rule the trial court did not err in rejecting the instruction, for another reason suggested by respondent—which is that it permitted the jury to rove beyond the pleadings and evidence. In applying the ordinance to the facts it authorizes a verdict if the motorman negligently failed to yield the right of way in *any reasonable manner*. This was outside the petition, we think, according to the construction put upon it by the parties—though the petition is rather vague in its charge of negligence—but whether that be true or not it certainly was outside the evidence, for appellant, himself, argues in his brief that under all the proof the only way the motorman could have yielded the right of way was by *stopping*.

The law is well settled that an instruction ranging beyond the limits of either the pleading or the evidence is erroneous. We might hold the error harmless under the facts of this case if the instruction had been *given* and the respondent were complaining, for it is not always reversible error to predicate an instruction on facts outside the record if the deviation does not mislead the jury and actually is not prejudicial to the other party (14 R. C. L. 783, par. 49, and 791, par. 51; 38 Cyc, 1621; State v. Coleman, 186 Mo. 151, 160, 84 S. W. 978, 69 L. R. A. 381; Schaefer v. St. L. & Sub. Ry. Co., 128 Mo. 64, 74, 30 S. W. 331); but when the instruction is *refused* the rule is different. A trial court will not be convicted of reversible error for failure to give an instruction unless the instruction is substantially correct, some authorities say strictly and entirely accurate. [14 R. C. L. 801, par. 60; 38 Cyc. 1707; Linton v. St. L. Lightning Rod Co. (St. L. Ct. Apps.), 285 S. W. 183, 187; Viles v. Viles (Spring. Ct. Apps.), 190 S. W. 41, 43; Trustees of Christian University v. Hoffman, 95 Mo. App. 488, 497, 69 S. W. 474.] And so we must uphold the ruling of the learned trial court.

Other criticisms of the instruction are made by respondent, but they go more to matters of form and evidence which probably will not recur on a new trial. So we shall not extend the opinion by discussing them, except to say we think and hold the evidence was sufficient to take the case to the jury.

II. Much of what has been said in the preceding paragraphs applies to the next assignment of error. Appellant complains of the giving of respondent's Instruction D-3. This instruction is a counterpart of the one already mentioned as having been approved on the former appeal. It says:

"The court instructs the jury that the ordinance read in evidence did not require a motorman to stop his car when the same is meeting a police patrol."

We have already explained the record upon which this court approved this instruction in its former opinion, showed the trial theory was that the ordinance imposed an absolute and unconditional duty to stop. But in view of the issues raised at the last trial *nisi,* we are constrained to hold the instruction bad for the reasons heretofore given. It tells the jury positively and without any expressed condition or restriction that the ordinance does not require a motorman to stop a street car when meeting a police patrol; and respondent's counsel admit in their brief, indeed they argue, that it is irreconcilably inconsistent with the declaration of law in plaintiff's Instruction P-4 which we have already approved on that point. To permit the instruction to stand would be to say that in Kansas City street cars must give the right of way to patrol wagons only if and when they can do so without stopping.

In our belief also this Instruction D-3 conflicts with appellant's Instruction P-1. The latter as given by the court is the same as the one appearing on page 539 of 317 Missouri Report and on page 410 of 297 Southwestern Reporter, where the opinion on the former appeal is reported, and so we shall not set it out here. Suffice it to say the instruction declared that if there was an ordinance requiring street cars to give the right of way to patrol wagons and a custom requiring them to stop, etc., and if the motorman negligently failed to stop, the verdict should be for plaintiff. In other words, this Instruction P-1 predicated actionable failure to stop not only on the existence of the custom but on existence of the ordinance as well. This, it seems to us, was equivalent to saying the ordinance required the motorman to stop (otherwise, why mention it) which clashes with the statement in Instruction D-3 to the contrary. In any view the two instructions taken together give no intelligible declaration on the point and are confusing and misleading. This comment, however, is not to be taken as approving Instruction P-1. That is a question not raised on this appeal.

III. Complaint is made of the giving of other instructions for respondent, but since the foregoing disposes of the case we shall go

into only one of the remaining questions presented. The others should disappear when the cause is tried again. Appellant takes exception to the giving of respondent's instruction D-11, which declared if "the injury complained of was the result of mere accident or misadventure, without the fault or negligence of anyone, then the plaintiff cannot recover . . ." The objection made is that no instruction on the theory of accident was proper in this case.

Respondent justifies the instruction on two grounds: (1) that under the evidence the jury could have found all the participants in the occurrence free of blame; (2) and if not that, they could at least have acquitted the appellant and the motorman of negligence and have fastened the responsibility on the police chauffeur or the old man who stepped off the platform and forced the patrol wagon into collision with the street car. It is argued that since both of these last named parties were not under the control of the litigants and are strangers to the suit, their negligence did not make the event any the less an accident, for the purposes of this case. Answering the suggestion that this second contention is inconsistent with the terms of the instruction because the latter is predicated on absence of negligence on the part of *anyone*, the respondent replies that this limitation in the instruction was error against respondent of which appellant cannot complain, and in fact does not, his only assignment being that *no* accident instruction should have been given.

Granting, without deciding, the foregoing conclusions of fact are allowable under the evidence, the conclusions of law do not follow. It will be noticed the respondent assumes an accident instruction is proper if the evidence permits an inference that the parties (participants or litigants) were *innocent of negligence*. This is not the law unless there is something in the record tending to show the casualty resulted from an *unknown cause*. It is not every true accident case in which the court may instruct on accident. When, as here, the misadventure resulted from known actions of known persons and things, the giving of an accident instruction is error by the great weight of recent authority in this state. The following are Supreme Court cases only, but the same point has been decided by all three of the courts of appeals: Beauvis v. City of St. Louis, 169 Mo. 500, 506, 69 S. W. 1043; Wise v. St. L. Transit Co., 198 Mo. 546, 559, 95 S. W. 898; Zeis v. St. L. Brewing Assn., 205 Mo. 638, 648, 104 S. W. 99; Beave v. St. L. Transit Co., 212 Mo. 331, 355, 111 S. W. 52; Felver v. Cent. Elec. Ry. Co., 216 Mo. 195, 208, 115 S. W. 980; Briscoe v. Met. St. Ry. Co., 222 Mo. 104, 111, 116, 120 S. W. 1162; Simon v. Met. St. Ry. Co. (Mo. Div. 2), 178 S. W. 449; Turnbow v. Dunham, 272 Mo. 53, 65, 197 S. W. 103; Beard

v. Mo. Pac. Ry. Co., 272 Mo. 142, 156, 197 S. W. 907; Maloney v. United Rys. Co. (Mo. Div. 2), 237 S. W. 509, 515; Dietzman v. St. L. Screw Co., 300 Mo. 196, 214, 254 S. W. 59; Chaar v. McLoon, 304 Mo. 238, 245, 263 S. W. 174; Hanke v. City of St. Louis (Mo. Div. 1), 272 S. W. 933, 937; Head v. Leming Lbr. Co. (Mo. Div. 1), 281 S. W. 441, 444; Boland v. St. L. & S. F. Ry. Co. (Mo. Div. 1), 284 S. W. 141, 145.

The word "accident," in popular acceptation and sometimes in law, may denote an occurrence arising without intent or design or even from the carelessness of man; but in the law of negligence it signifies an event resulting in damage or injury, proceeding from an unknown cause or from a known cause without human agency or without human fault. [1 C. J. 390 et seq.; 20 R. C. L. 17 et seq.] The essential requirement is that the happening be one to which human fault does not contribute. [Hoffman v. Peerless White Lime Co., 317 Mo. 86, 102, 296 S. W. 746.] But when the cause of accident is known it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions to instances in which there is evidence tending to show the cause is unknown— on the theory that the contrary and more abstract course would confuse the jury. This we understand to be the import of the authorities.

Thus it is said in Beauvais v. St. L. Transit Co., supra (169 Mo. l. c. 506):

"An instruction of that kind is sometimes applicable to a case in which the cause of the accident is involved in so much doubt that it cannot be ascertained with reasonable certainty that it is attributable to the negligence of either party, but it has no application to the facts of this case. This accident was caused either by the defect in the sidewalk alone, or by that and the negligence of the plaintiff contributing, and on those points the jury had ample instructions."

And in Wise v. St. Louis Transit Co., supra (198 Mo. l. c. 560):

"There was no evidence in the case of any accident or misadventure. The issue tendered by the pleadings and by the evidence was simply whether defendant was negligent or not, and the court was right in not inviting the jury into a field of conjecture and speculation."

In Zeis v. St. Louis Brewing Assn., supra (205 Mo. l. c. 651), a Banc case in which the entire bench concurred in condemning an accident instruction, the court said:

"If after considering all the evidence in the case, offered by both plaintiff and defendant, and there is no evidence found of negligence, with resulted in the injury, then the injury is said to be the

result of an accident. An accident is the happening of an event proceeding from an unknown cause."

It will be observed the quotation says if there is no evidence of negligence attending a misadventure, the happening is an accident; and then goes on to say an accident is the result of an unknown cause. Both statements are true, but thus put together they are misleading. There may be an absence of negligence when the cause is not unknown—as where the injury results from the known act of a person without human fault. But the case has always since been understood to mean that an accident—for the purpose of determining the propriety of an accident instruction—must have its origin in an unknown cause.

. The matter is considered at some length in Chaar v. McLoon, supra (304 Mo. 1. c. 245, et seq.), and many other cases might be reviewed, but we have already extended the discussion unduly in an effort to demonstrate the reason for the rule—because there are certain cases which support respondent's contentions. In Sawyer v. H. & St. J. Railroad Co., 37 Mo. 240, 262, 90 Am. Dec. 382, the plaintiff was injured through the wrecking of a train in the night at a bridge which had been burned by the "public enemy" during the Civil War. This court said if the facts were unknown and unkownable to the conductor "then it was the burning of the bridge that was the sole cause of the accident and injury, and in reference to the conductor and the defendant it was pure accident or misadventure." It was ruled an accident instruction was properly given. And in Lehnerts v. Otis Elevator Co. (Mo. Div. 2), 256 S. W. 819, 822, a workman in an elevator shaft received injuries to his eye from plaster dropped by another person working for a different employer. This court said: "If the plaster was caused to fall by others over whom defendant had no control and without fault of defendant, then such act was an accident so far as the issues here involved are concerned;" and an accident instruction was approved.

These two cases undoubtedly sustain the respondent's contention that where responsibility for plaintiff's injuries rests wholly with a third party the defendant is entitled to an accident instruction, which means, of course, that if the parties to the suit are free of blame such an instruction is proper. But both cases overlook the vital question as to whether the occurrence resulted from an unknown cause—indeed, the rule had not. been evolved when the first one was decided; and in view of that controlling consideration, the point they do discuss becomes academic. This, apparently, was the conclusion reached in Felver v. Cent. Elec. Ry. Co., 216 Mo. 195, 208, 115 S. W. 980, where the same question came up.

One more authority should be referred to. In the list of decisions cited earlier in this discussion are many which say that when the

evidence shows a plaintiff's injuries were caused either by the defendant's negligence or the plaintiff's negligence or the concurring negligence of both, an accident instruction should not be given. Reasoning from that premise it has been said in a recent case, Yawitz v. Novak (Mo. Div. 1), 286 S. W. 66, 67:

"An accident instruction, if permissible at all, is authorized because the evidence shows, or justifies an inference, that the injury resulted in the absence of negligence on the part of either the plaintiff or the defendant. It is only where it can be said as a matter of law that the injury could not have resulted without negligence that an accident instruction should not be given, and, if a finding can be approved under the evidence that neither party was negligent, then an accident instruction should be given."

But we submit this conclusion does not follow. If it were so, an accident instruction should be given in *every* case where the question for the jury is as to the negligence of the *defendant alone*; and it has long been ruled that when the issue is simply one of the defendant's negligence *vel non,* the giving of an accident instruction is error. [Wise v. St. L. Transit Co., supra, 198 Mo. l. c. 560; Turnbow v. Dunham, supra, 272 Mo. l. c. 65.] When the line of cases mentioned say an accident instruction has no place if the evidence show a misadventure was caused by the negligent acts of one or both of the parties, the meaning is that in those circumstances it stands established the occurrence resulted from known causes. But, on the other hand, though there be a doubt as to the negligence it does not follow there is also doubt as to the cause of the mishap. Negligence is simply a quality of an *act* of commission or omission: and only when the record supports an inference that the occurrence proceeded from an unassignable cause may the instruction be given.

In this Yawitz case the defendant slammed the door of his automobile on the defendant's finger. The plaintiff claimed the defendant was negligent; the defendant claimed the plaintiff was negligent; and there was a possibility both were to blame. The case holds the injury resulted from (1) slamming the door, and (2) having the finger on the door frame; that the jury might well have concluded neither plaintiff nor defendant was negligent; that whatever brought about the coincidence of these two acts was the *cause* of the injury; and if the jury could find *that* cause was unknown, an accident instruction was warranted. Without going into the law of proximate cause is it not clear that if this be the correct rule there could hardly be a case involving negligence and contributory negligence in which an accident instruction would not be called for, for who could say *why* both parties happened to be negligent at the same time?

We think the giving of the accident instruction in this case was error.

For the reasons assigned, the cause is reversed and remanded. *Lindsay* and *Seddon, CC.*, concur.

PER CURIAM:—This cause coming into Court en Banc from Division One, the foregoing opinion of ELLISON, C., is adopted as the opinion of the court. *White, C. J.*, and *Ragland, Gantt* and *Frank, JJ.*, concur; *Walker* and *Blair, JJ.*, dissent; *Atwood, J.*, not sitting.