AUTOMOBILE INSURANCE COMPANY OF HARTFORD, Subrogee of Milleman & Shelton, Inc., Appellant,

v.

J. C. NICHOLS COMPANY, a Corporation, Respondent.

No. 22656.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1957.

Paul Niewald, Knipmeyer, McCann & Sanders, Kansas City, for appellant.

Raymond G. Barnett, Kansas City, for respondent.

BROADDUS, Presiding Judge.

This action for damages to property caused by smoke was instituted in the name of Milleman & Shelton, Inc. Thereafter, the plaintiff filed its first amended petition wherein the Automobile Insurance Company of Hartford, Subrogee of Milleman & Shelton, Inc., was substituted as a party plaintiff.

The first amended petition upon which the case was tried alleged that on the 16th day of August, 1954, the defendant, J. C. Nichols Company, by and through its employee had complete custody and control of a building located at 446 Ward Parkway, Kansas City, Missouri, and of an acetylene torch being used by the defendant's employee. That the defendant, by and through its employee was negligent in the handling and operation of said acetylene torch, and as a result thereof a fire was started in said torch, or parts of it, causing smoke to enter into the premises occupied by Milleman & Shelton, Inc., resulting in damages in the amount of $2,000. That at said time the plaintiff, Automobile Insurance Company of Hartford, had in force and effect an insurance policy on said Milleman & Shelton, Inc., and that as a result of said loss and claim thereby and under the terms of its insurance policy it did pay the said Milleman & Shelton, Inc., and became subrogated to its rights.

The answer admitted that at various times on the date of August 16, 1954, the defendant was in custody and control of the one-story building, and that at some of said times on said date one Bill Kirby was employed by it to do certain work in said property with an acetylene torch and welding device in connection with construction work that was going on there for the benefit of the parking area. The answer also alleged that plaintiff was contributorily negligent in that the openings to the building were permitted by it to remain open,

notwithstanding knowledge and existence of said smoke in time to have closed said openings and thus have avoided the damage.

The trial before a jury resulted in a verdict in favor of defendant. Plaintiff has appealed.

Mr. True N. Milleman testified that he was the owner of the restaurant located on the Plaza, known as Milleman's Restaurant; that on August 16, 1954, he was in the restaurant "generally managing the affairs of the dining room"; that "during the noon period, and quite suddenly", he "noticed a lot of very black smoke coming into the restaurant"; that the first thing he did was to turn off the ventilating system so that it wouldn't create any draft; that he then went outside of the building to the adjacent property located east of the Milleman property, and observed smoke and some flame in this adjacent property; that the smoke continued to come into the restaurant for "what seemed like thirty-five or forty minutes", depositing heavy soot on the carpets and walls.

After showing the extent of its loss ($1,964.72) plaintiff offered the deposition of William Kirby. Mr. Kirby testified that he was an iron worker; that he had been working around the Milleman Restaurant on August 16, 1954; that at said time he was employed by defendant and was "cutting some light angle iron" with a welding torch, using the regular combination torch with acetylene and oxygen bottles; that the bottles were connected to about 100 feet of hose; that the acetylene torch "could be cut off at the torch as well as back at the bottle"; that when he left the first floor of the premises where he was using the torch to go up to the second floor to install "some angles" he turned the welding outfit off at the torch; that he had been gone from the first floor "five to ten minutes" when he became aware of the fire; that he returned to the first floor and found that "the acetylene tank was on fire and the hose of the cutting torch."

He further testified that he was the only one in charge of or using this cutting torch, and that there was no other torch on the same level that he was working on, nor was there any other kind of fire apparatus being used on either the first or second floor during that day; that there were some air-conditioning ducts and pipes in the area in which he was working and installing these angles.

Defendant's evidence was to the effect that the area in which the welding torch was located was of concrete construction, and that the first indication that Kirby had of the fire was when he saw smoke coming up through the hatchway, which was a part of the air-conditioning equipment.

There was no evidence offered tending to prove that there was any other cause of the fire than the welding torch, nor was there any evidence of anyone other than Kirby ever having handled or used the torch.

■ Plaintiff's first contention is that the court erred in giving on defendant's behalf Instruction "A", which reads as follows:

"The Court instructs the jury that if they believe from the evidence that the fire which caused the smoke was the result of mere accident or casualty, and not of negligence on the part of defendant then your verdict must be for the defendant."

In our opinion, it was error to give this instruction. All of the evidence points to the fact that the cause of the loss, fire in the welding equipment, was known. Our courts have repeatedly held that the giving of an accident instruction where the cause of the loss is known is error. The leading case for this proposition is Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S.W.2d 707, 713, 65 A.L.R. 129, which states:

"The word 'accident,' in popular acceptation and sometimes in law, may de-

note an occurrence arising without intent or design, or even from the carelessness of man; but in the law of negligence it signifies an event resulting in damage or injury, proceeding from an unknown cause, or from a known cause without human agency or without human fault. 1 C.J. p. 390 et seq.; 20 R.C.L. p. 17 et seq. * * * But, when the cause of accident is known, it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions in instances in which there is evidence tending to show the cause is unknown—on the theory that the contrary and more abstract course would confuse the jury. This we understand to be the import of the authorities."

And further at page 714 of 19 S.W.2d: "* * * and it has long been ruled that, when the issue is simply one of the defendant's negligence *vel non*, the giving of an accident instruction is error."

Some of the more recent cases to the same effect are Little v. Wilkerson, Mo. Sup., 273 S.W.2d 182, 184; Wilson v. Chattin, 335 Mo. 375, 72 S.W.2d 1001, 1002; Mitchell v. Dyer, Mo.Sup., 57 S.W. 2d 1082, 1083, and Dill v. Dallas County Farmers' Exchange, Mo.Sup., 267 S.W. 2d 677, 681.

And in a case submitted on the *res ipsa loquitur* theory involving a situation where the plaintiff was burned while receiving a permanent wave, we find the court taking the same view as to the use of this instruction. In Walker v. Klein, Mo.App., 127 S.W.2d 51, 55, it is said: "It is the established law of this State in negligence cases that it is error for the trial court to give an instruction on the theory of accident where the cause of the casualty is known and the issue is whether the defendant was guilty of negligence *vel non*, for the reason that such an instruction in such a case permits the jury to go outside of the evidence and to indulge in conjecture and speculation in reaching their verdict * * *. Defendant contended that an accident instruction was proper if the evidence permitted an inference that the parties (participants or litigants) were innocent of negligence. The Supreme Court said that was not the law unless there was something in the record tending to show the casualty resulted from an unknown cause."

Plaintiff next contends that Instruction "B" which dealt with the burden of proof was erroneous. It contained the word "establish", and plaintiff says that the use of that word placed a greater burden on plaintiff than the law requires. Our Supreme Court held otherwise in the case of Morris v. E. I. Du Pont De Nemours & Co., 351 Mo. 479, 173 S.W.2d 39, 40, syl. 12.

Plaintiff also asserts that it was error to give Instruction "H". This instruction is identical with Instruction No. 6 given in the Dill case, supra [267 S.W.2d 681]. While the opinion in that case did not hold that the giving of the instruction constituted reversible error, it did say that the instruction "is involved and abstract, and it is doubtful" that it "would aid a jury in arriving at a correct verdict * * *." In view of that criticism, the instruction should not be given in the event the cause is re-tried.

Defendant does not expressly make the point that plaintiff failed to make out a submissible case under the *res ipsa loquitur* doctrine. In its printed argument it cites and quotes from the case of Hendricks v. Weaver, Mo.Sup., 183 S.W. 2d 74. In that case the surviving parents sought to recover damages on account of the alleged wrongful death of their infant daughter. Their petition alleged that defendants negligently allowed a stove to explode and catch fire and give off smoke which caused the death of their daughter. The opinion points out that the evidence concerning the alleged ex-

plosion of the stove was extremely meager; that there was no evidence fixing the time when the stove was last in operation prior to the fire, nor was there any evidence that it was in operation on the night of the fire; that there was no evidence that the fire started in the private office where the stove was located; nor was there any evidence from which an inference could be drawn that the fire started from the stove.

In the later case of Cooper v. 804 Grand Bldg. Corp., Mo., 257 S.W.2d 649, 652, the Supreme Court refers to the Hendricks case and two others and then says:

"In these cases, and others cited by defendant-appellant, *there was a lack of evidence of the physical cause of the occurrence, or the shown attendant circumstances were not such as would support a reasonable inference that some physical cause of the occurrence was occasioned by some act or omission of defendant* (or of another for whose conduct the defendant was legally responsible). We bear in mind that the attendant facts must raise a reasonable inference of defendant's negligence (but they need not exclude every other inference)." (Emphasis ours.)

The Hendricks case cited with approval the case of Kapros v. Pierce Oil Corp., 324 Mo. 992, 25 S.W.2d 777, 781, 78 A.L.R. 722, which contains this language: "As to fires, the general rule is the mere occurrence of a fire does not raise a presumption of negligence though 'the doctrine has been held to apply where * * * the circumstances under which the fire originated and spread are such as to show that defendant or his servants were negligent in connection therewith.' 45 C. J. § 771, p. 1204. See, also, 20 R.C.L. § 157, p. 190."

In Shain on *Res Ipsa Loquitur* at page 471, it is said: "In conformity with the rules governing applicability of the doctrine of *res ipsa loquitur,* it is applied to fires where it is shown that defendant

had control and where the attending circumstances are such as to make it probable that the defendant or his servants were negligent."

 Without again reviewing the evidence, we think it clearly supports a reasonable inference that the fire in the welding equipment was occasioned by the negligence of defendant's employee, Kirby.

For the error in giving Instruction "A" the judgment is reversed and the cause remanded for a new trial.

All concur.