**Ray G. KLESATH and Inez Klesath, Plaintiffs-Appellants,**

v.

**Billie Paul McQUEEN, Defendant-Respondent.**

**No. 46152.**

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

James Patrick Quinn, Alex D. Peebles, Quinn & Peebles, Kansas City, for appellants.

John L. Sheridan, Donald E. Raymond, Kansas City, Pew, Taylor, Sheridan & Baty, Kansas City, of counsel, for respondent.

HOLMAN, Commissioner.

At about 9:30 p.m. on May 4, 1955, fourteen-year-old Gary Klesath was killed when the car in which he was riding ran off a Jackson County roadway and overturned. Plaintiffs (Gary's parents) insti-tuted this action seeking to recover damages in the sum of $15,000 from defendant (the driver of the car in which Gary was riding) for the alleged wrongful death of their son. A trial resulted in a verdict for the defendant. Plaintiffs have appealed.

The only contentions of error relate to instructions given at the request of defendant. We will state such of the facts as appear to be necessary for an understanding of the issues presented.

Defendant and Gary became acquainted on the afternoon preceding the casualty when defendant (then 17 years old) was employed by Mr. Klesath to help Gary cut the grass at their home. That evening defendant took his fiancee to a church meeting at 7:30 and was to return for her at the conclusion of the meeting which he thought would be between 9:30 and 10 o'clock. Accompanied by Gary, defendant spent the evening "riding around, wasting time until it was time to pick her up again."

Just prior to the casualty defendant was driving eastwardly on 110th Street which is also known as "Red Bridge Road." The road was described by defendant as being a "very bad road, very *curvey*." The automobile left the blacktop pavement at a point described as 42 feet east of a railroad crossing which intersects the road in the middle of a curve. As it traveled down a five-foot embankment it turned over onto its right side and came to rest in the ditch to the right of the roadway about 115 feet east of the railroad crossing. Photographs in evidence show very clearly that after defendant crossed the railroad track it was necessary for his car to be turned rather decidedly to the north or left because of the curve in the road at that point. For some reason he did not, or perhaps could not, "make" the turn.

Plaintiff relied upon the res ipsa loquitur doctrine. In Instruction No. 1 the jury was authorized to infer negligence from the fact that defendant "caused and permitted" the automobile to leave the pavement and to turn over. Plaintiffs offered

the testimony of a deputy sheriff who arrived at the scene shortly after the casualty. He related that he talked with defendant at that time and defendant stated that he was driving 45 m. p. h. and that his brakes failed and he just couldn't make the curve.

The defendant testified that he slowed the car to 20 or 25 m. p. h. when he crossed the railroad tracks and immediately thereafter he felt the right front of the car drop down; that he heard a "scraping and dragging sound"; that he applied the brakes and found he had none; that the car was locked, "I couldn't steer it"; that it veered to the right because of the drag; that he reached for the emergency brake but at that time Gary opened the door on the right side and defendant "let go of the emergency brake" and reached for Gary; that the car then turned over on its right side and slid to a stop. Gary was caught under the car and appeared to have been instantly killed.

Defendant presented the testimony of an expert witness to the effect that an "upper A arm support" was broken off the frame. That permitted the right front "wheel to fall out flat to the ground, that in turn broke the brake line and pulled the tie rod loose, you wouldn't be able to control the car at all." The arm in question was attached to the frame by four "welds" or "rivets." According to photographic evidence and the expert witness, two of the welds had been freshly broken and two had been broken for some time. It was stated, however, that the broken rivets could not have been discovered by a casual examination of the car; that you would never know there was a defect "until it broke." That witness also stated that in his opinion the two remaining rivets holding the "arm" to the frame were caused to pull loose by the "undue strain" created when the car went over a bump just before reaching the crossing and in making the curve to the left.

In connection with the evidence concerning the previous condition of the car, it appears that while title was in his mother, defendant may have had some interest in it and seemed quite familiar with the condition of the car and repairs made thereon, as indicated by his testimony, as follows:

"Q. Had you driven the car on a number of occasions? A. Oh, yes.

"Q. You had never had any trouble with it previously? A. When I first bought it then I had the engine completely worked on, new master cylinder, brakes relined.

"Q. Did you buy the car or your mother? A. My mother bought the car.

"Q. Go ahead. A. Then we had all this work done on it, I believe just right after we bought it we had a new valve job, brakes relined, master cylinder. The car after that to my notion was in very good condition."

Upon this appeal plaintiffs contend that the court erred in giving defendant's instructions numbered 8, 9, and 10. Instruction No. 8 reads as follows: "The court instructs the jury that if they find and believe from the evidence that the death of said Gary Klesath was caused by an accident, mischance or misfortune, and not due to any negligence on the part of the defendant, then plaintiffs are not entitled to recover and your verdict should be in favor of the defendant." Instruction No. 9 directed a verdict for defendant upon a finding that "the front wheel of the automobile suddenly and unexpectedly collapsed and fell down, and that by reason thereof the defendant was unable to steer or control said automobile or to turn the wheels thereof, * * * and that the collapse of the wheel of the automobile was the sole cause of the automobile running off the road and turning over, * * * and the death of said Gary Klesath were not due

to any negligence on the part of defendant * * *." Instruction No. 10 directed a defendant's verdict if the jury found "that the brakes of said automobile suddenly and unexpectedly failed to operate to slow said automobile, * * * and the failure of the brakes on said automobile to operate was the sole and proximate cause of the automobile running off the highway, * * * and that the death of said Gary Klesath were not due to any negligence on the part of defendant * * *." The court also gave defendant's Instruction No. 11 which directed a verdict for defendant upon a finding "that the front wheel of the automobile suddenly and unexpectedly collapsed and fell down, and that as the result thereof, it was not possible for defendant either to steer or turn the wheels of the automobile or to operate the brakes thereof and * * * as the result thereof defendant was suddenly and without negligence on his part faced with an emergency, and that he attempted to apply the emergency brake on the automobile and to hold said Gary Klesath inside of the automobile; and * * * was exercising the highest degree of care in the operation of the automobile, and that the death of said Gary Klesath were not the result on [of] any negligence on the part of defendant * * *."

We have concluded that the giving of defendant's so-called accident instruction (No. 8) was error. In this connection it may be noted that defendant, in his brief, states, "The issues in the case at bar were simple and clear. Plaintiffs submitted their theory of the case in Instruction No. 1 which, in effect, told the jury that they might infer negligence, under the res ipsa loquitur doctrine, from the fact that the automobile driven by defendant ran off the highway. Defendant's theory of the case was that the death resulted from accident caused by a sudden, unforeseeable mechanical breakdown."

One cannot read the cases upon the subject without concluding that, in most instances, there is considerable risk of error in the giving of a general accident instruction such as the instant one. In Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S.W.2d 707, 713, 714, 65 A.L.R. 129, it is stated that "when the cause of accident is known, it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions to instances in which there is evidence tending to show the cause is unknown—on the theory that the contrary and more abstract course would confuse the jury. * * * But, on the other hand, though there be a doubt as to the negligence, it does not follow there is also doubt as to the cause of the mishap. Negligence is simply a quality of an *act* of commission or omission, and only when the record supports an inference that the occurrence proceeded from an unassignable cause may the instruction be given."

█ In our recent case of Little v. Wilkerson, Mo.Sup., 273 S.W.2d 182, the giving of a general accident instruction was held to be error because the cause of the collision was known. In that case there was a head-on collision when defendant's car entered plaintiff's lane of travel on an icy road. Plaintiff claimed defendant turned out to pass another car, while defendant contended that a car behind him struck his car and caused it to slide into plaintiff's lane. It was held that the cause of the collision was the presence of defendant's car in plaintiff's lane of travel, and hence conflicting evidence as to why or how it got there related to the issue of defendant's negligence or non-negligence, but not to the issue as to the cause of the collision. The rule that a general accident instruction should not be given when the cause of the casualty is known is also supported by Dill v. Dallas County Farmers' Exchange No. 177, Mo.Sup., 267 S.W. 2d 677, Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355, and Rehkop v. Higgins, Mo.Sup., 306 S.W.2d 516.

Some of the foregoing cases suggest that an accident instruction may be given if the occurrence was due to a known cause which was without human agency or without human fault. We do not understand, however, that such would authorize the giving of a general accident instruction such as the instant one. If the cause is known, the facts tending to support the theory of accident should be hypothesized in the instruction.

In the instant case plaintiffs contend that the cause of Gary's death was known, i. e., that the car went off the road and turned over and hence the issue for the jury was whether defendant was or was not negligent in causing or permitting it to do so. Little v. Wilkerson, supra, would seem to lend considerable support to that contention. Defendant, however, contends that the casualty was caused by accident, i. e., the unforeseeable mechanical breakdown of his automobile. In support of that contention defendant offered evidence which described in detail the precise mechanical break which caused the defendant to lose control of the car. Even under defendant's theory of the case the cause of the occurrence was known. The defendant's evidence, as stated, specifically described the cause of the casualty. If the jury believed that testimony, the issue remaining (in this res ipsa case) would seem to be whether defendant was negligent in not discovering the unsafe condition of the car before the "A arm support" completely broke loose from the frame.

Defendant in his brief, however, states that "the most that can be said against Instruction No. 8, in the instant case, is that it is an indefinite or abstract statement of the applicable law," and since all instructions are considered together, it "could not be confusing in the instant case because it was followed immediately by precise, specific instructions setting forth defendant's theory of accident." We do not agree. On the contrary, we have the view that the giving of Instructions Nos. 9, 10, and 11 accentuated the prejudicial effect of Instruction No. 8. Our reason for that conclusion is that those instructions purported to hypothesize in detail the facts relied upon by defendant and supported by his evidence as the nonnegligent cause (described by defendant as an accident) of the casualty. Since all of defendant's theories concerning the accidental happening of the event, which were supported by the evidence, were thus specifically submitted, we think the jury would have considered that the general nature of Instruction No. 8 would authorize it to consider some other cause in the nature of an "accident, mischance, or misfortune" which might have brought about the unfortunate death of Gary Klesath. Such would invite the jury to indulge in unrestricted speculation, beyond the realm of the evidence, in a search for an accidental cause of the casualty. In that connection it may be noted that Instruction No. 8 did not refer to Instructions Nos. 9, 10, and 11. For the reasons stated, we rule that prejudicial error was committed in the giving of Instruction No. 8.

We will not extend this opinion by a discussion of the alleged errors in regard to Instructions Nos. 9 and 10. Since the case must be retried, defendant will want to re-examine those instructions and make such corrections as he may think necessary in view of the attack made thereon by plaintiffs upon this appeal.

The judgment is reversed and the cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.